SCHOOL DISTRICT No. 36 v. GLADISH.

Opinion delivered February 9, 1914.

1. SCHOOL LANDS—RIGHT OF COUNTY JUDGE TO LEASE.—Under Acts of 1905, page 398, the county judge has power only to lease sixteenth section or school lands for the purpose of clearing and putting them in cultivation, which gives the lessee the right to cut and remove timber from the land leased. (Page 335.)

2. SCHOOL LANDS—LEASE—TERMS.—In a lease of school lands it may be stipulated that the lessee shall fence the lands, and build tenant houses thereon. (Page 336.)

3. SCHOOL LANDS—LEASE—POWERS OF COUNTY JUDGE.—Under Acts 1905, page 398, the county judge has no power to lease a portion of the school lands, and sell the timber on the remaining part of the lands, for the purpose of clearing that which is actually leased. (Page 335.)

4. SCHOOL LANDS—SALE OF LAND OR TIMBER.—The act of a county judge in attempting to sell either school lands, or the timber thereon, is void, under Acts 1905, page 398. (Page 336.)

5. SCHOOL LANDS—ILLEGAL SALE OF TIMBER—CONTRACT OF LEASE—VALIDITY.—The provision in a contract for the leasing of school lands, for the sale of timber, while void, will not invalidate the entire contract. (Page 336.)

6. SCHOOL LANDS—TIMBER ILLEGALLY CUT—REMEDY.—A suit will lie in the circuit court to recover the value of the timber illegally cut on school lands. (Page 336.)

7. EQUITY—JURISDICTION FOR ALL PURPOSES.—When a court of chancery has jurisdiction over a case for any purpose, it may retain the cause for all purposes and proceed to a determination of all the matters at issue. (Page 336.)

8. SCHOOL LANDS—TIMBER ILLEGALLY CUT—EQUITY PRACTICE.—Where equity has obtained jurisdiction in an action to set aside a lease of school lands, although the lease is valid, equity should proceed

to render judgment against the lessees, for timber which they have cut illegally from lands, not covered by the lease. (Page 336.)

9. COUNTY PROPERTY—ILLEGAL LEASE—SUIT BY TAXPAYER.—A suit may be prosecuted by any citizen for himself and other citizens and taxpayers of the county to annul and cancel an illegal and fraudulent lease made by the county judge of the county property. (Page 337.)

Appeal from Mississippi Chancery Court, Osceola District; *Chas. D. Frierson,* Chancellor; reversed.

STATEMENT BY THE COURT.

This suit was instituted in equity by F. O. Hatcher and G. W. Scudamore, as directors of school district No. 36 in Mississippi County, Arkansas, and as individuals and taxpayers of said school district, against S. L. Gladish, as county judge of Mississippi County, and John B. Driver, Jr., C. B. Hall, and W. B. Calhoun, to set aside a lease of sixteenth section, or school land, on the alleged grounds of fraud and illegality in making the lease.

Section 16, township 12 north, range 8 east, is situated in said school district and within a quarter of a mile of Little River, in Mississippi County. About seven years ago, between 160 and 200 acres of said land was burned over. All of the section except 100 acres in a cypress brake is suitable for cultivation, and all of the section was wild and uncleared land. On the 19th day of February, 1912, S. L. Gladish, as county judge of Mississippi County, leased the 200 acres of said section which had been burned over to John B. Driver, Jr., for the term of five years, and the lessee agreed to clear and put in cultivation said 200 acres, and to fence the same with a woven wire fence with two barbed wires on the top. He also agreed to build a two-room box house, rooms to be sixteen by sixteen feet, on each forty acres of the land cleared. The houses were to be built on brick pillars and to be of cypress boxing and covered with galvanized iron. The rooms were to be ceiled overhead with No. 2 pine ceiling and floored with tongue and grooved pine flooring, and all flues were to be brick. The lease further provided that in consideration of John B. Driver, Jr., clear-

ing the land and building the houses and fences, as provided in the lease, all of the merchantable timber on the whole of said section was sold to him, and it was provided that he should cut the timber off of the land before the lease expired. The lease was let to the highest bidder, and on the same day, and before the contract was reduced to writing, Driver assigned and transferred a two-thirds interest in the lease to W. B. Calhoun, and Calhoun in turn transferred and assigned one-half of his two-thirds interest to C. B. Hall.

The evidence on the part of the plaintiffs tended to show fraud in the letting of the contract by the county judge to Driver, and in the subsequent assignment by him of an interest to Calhoun and Hall. The evidence for plaintiffs also showed that the 200 acres leased to Driver on account of having been burned over could be put in cultivation for the sum of $4 per acre; that the remainder of the section was covered with fine merchantable timber, consisting of ash, elm, maple, cypress, red gum, oak, sycamore, hackberry, cottonwood and hickory; that there were over five million feet of said merchantable timber, and the value of it was variously estimated by the witnesses from ten to twenty thousand dollars. On the other hand, the defendants introduced evidence tending to show that there was no fraud or collusion in the letting of the contract to Driver and the subsequent assignment by him of an interest therein to Calhoun and Hall. They testified that they had already cleared about fifty or sixty acres of the land; that they had cleared that portion which was easiest to put in cultivation, and that it cost from $12 to $15 per acre to clear it, and that it would cost much more than that per acre to clear the balance of the 200 acres; that they had sold about three million feet of the merchantable timber on the rest of the section, and they placed the value of it very much lower than that put by the witnesses for the plaintiff.

The chancellor dismissed the complaint of the plaintiffs for want of equity, and the case is here on appeal.

*W. J. Lamb* and *J. W. Rhodes, Jr.,* for appellant.

1.   The lease should be set aside for fraud and conspiracy.   2 Pom., Eq. Jur., § § 923-927, 667; 31 Cyc. 1573; 92 Ark. 518; 14 *Id.* 79; 17 Cyc. 760-1; 16 Cyc. 84.

2.   The county judge had no authority except that conferred.   Act 156, Acts 1905, p. 398.   He had no power to sell or give away the timber on lands not actually cleared and fenced for cultivation.   19 Ark. 311; 48 *Id.* 355; 49 *Id.* 172.

3.   Equity had jurisdiction.   38 Ark. 462; 33 *Id.* 704; 2 Dillon, Mun. Corp. (3 ed.), § § 731-2, etc.   Elliott on Mun. Corp. (2 ed.), § 371.

4.   Officers are presumed to act in good faith, and are prohibited from doing acts and making contracts which would result in placing them in such a position that their individual interest would be in opposition to their official duties.   23 Am. & Eng. Enc. 368, and cases cited.

*J. T. Coston,* for appellees.

1.   By act of Congress, June 23, 1836, the sixteenth section lands became the absolute property of the State. 19 Ark. 318.; 49 *Id.* 174.   The subsequent act, 1843, as null and void.

2.   Hearsay testimony was incompetent.   103 S. W. 609.

3.   There is absolutely no proof of fraud.   The notice was published according to law.   Acts 1905, ch. 156.

4.   The consideration was adequate.   2 Pom., Eq. 926; 12 How. 200.

5.   When a contract is signed by one party only, but accepted and acted on by the other, it binds both.   9 Cyc. 300; 30 Fed. 225; 30 N. E. 1060, 62 Ia. 231; 27 S. C. 376; 42 Col. 245.

6.   This looks like a spiteful, political lawsuit, and no showing was made for a court of equity to grant relief.   The court properly dismissed the bill.

HART, J., (after stating the facts).   In the case of *Mayers et al* v. *Byrne et al.,* 19 Ark. 308, the court held

that the act of Congress of March 3, 1843, providing that school lands shall not be sold without the consent of the inhabitants of the township, etc., was not binding upon the State. The court said:

"If this act of Congress is imperative upon the State, and if a sixteenth section can not be legally sold without a compliance with its provisions, it follows that the sale made in this case was irregular, and that the act of the Legislature affirming it is nugatory.

"But we think that by the act of Congress of June 23, 1836, supplemental to the act for the admission of Arkansas into the Union, and by the ordinance passed by the General Assembly, 18th of October, 1836, accepting the provisions of the supplemental act, the legal title to the land in question was granted to, and vested absolutely in, the State. The State accepted the grant, however, charged with the trust, that the land was to be appropriated to the use of the inhabitants of the township in which it was situated, for the use of schools. The State, as a sovereign, not as an individual, took upon herself a trust, which she was to execute, and could only execute, by such municipal legislation as her General Assembly might deem necessary and expedient to carry into practical effect the objects of the grant. The land was to be appropriated to the support of schools for the benefit of the inhabitants of the township in which it was to be situated, but whether this was to be effected by leasing the land, or selling it, and putting the proceeds upon interest, was not prescribed by the act of Congress making the grant, and of course was left to the discretion and good faith of the State."

This holding was reaffirmed in *Widner v. State*, 49 Ark. 172, where the court said that the State held the legal title to the sixteenth section land in trust for the support of schools for the inhabitants of the township in which the land was situated. In that case the court also held that it was for the Legislature to determine how and by whom these lands shall be managed and sold. So, also, in the first mentioned case the court, in discussing

the powers of commissioners in making a sale of six-teenth section lands, said:

"It may be conceded that as the commissioners acted under a special power it was necessary for them to comply with the terms of the power in order to make a valid sale, and that it was incumbent on the purchaser to take care that there was no departure from the special provisions of the power."

The lease in the case at bar was made under a special act applicable to Mississippi County alone, which is as follows:

"Section 1.   The county judges of the State of Arkansas are hereby authorized and empowered to lease any tract or parcel of wild and uncleared sixteenth section school lands situated in their respective counties, for a term not to exceed five (5) years, on terms satisfactory to said judges, upon the lessee entering into a good and sufficient bond to be approved by said county (judge) for the faithful performance of this lease contract.

"Section 2.   Whenever the county judge of any county in this State shall desire to lease any lands under the provisions of this act, he shall first cause notice of the time and place of the leasing of said lands, together with a description thereof, to be published in said county, or by posting written or printed notices in ten (10) conspicuous places in such county, one of which shall be at the courthouse and one on the land to be leased, thirty (30) days before the leasing of the same.

"Section 3.   All lands cleared and put in cultivation under the provisions of this act, shall, after the expiration of the lease contract, be by the sheriff of the county rented annually in the same manner as now provided by law for the renting of sixteenth section school lands.

"Section 4.   All laws and parts of laws in conflict herewith are hereby repealed, and this act shall take effect and be in force from and after its passage; provided, that the provisions of this act shall only apply to the county of Mississippi."   See Acts of 1905, page 398.

It will be noticed that section 1 of the act provides

that the county judge is empowered to lease for a term of five years any tract or parcel of wild and uncleared sixteenth section school lands situated in their respective counties, and that section 3 of the act provides that all lands cleared and put in cultivation under the provisions of the act shall, after the expiration of the lease contract, be rented annually by the sheriff of the county in the same manner as provided by law for the renting of sixteenth section school lands.

It follows from the principles announced in the cases above referred to and quoted from that the county judge had no power in the premises other than that granted by the statute, and that necessarily implied, because essential to carry out the power granted. There is nothing in the act which gives the county judge power to sell the timber on the land, and he had no authority to sell the timber on one part of the land to enable him to clear and put in cultivation another part. The act, in terms, only gave the county judge the power to lease the land for the purpose of clearing it and putting it in cultivation, and one of the implied powers essential to carry out the power expressly granted would be to give the lessee the right to cut and remove the timber from the land to be cleared; for it is obvious that the land could not be cleared and put in cultivation without cutting and removing the timber from it. See *Conway* v. *Coursey,* 110 Ark. 557, 161 S. W. 1030; *Reichardt* v. *Howe,* 91 Ark. 280. We think, also, one of the implied powers would be to provide in the lease contract that the lessee should fence the land and build tenant houses on it; for manifestly this would be necessary in order that the land might be profitably rented thereafter, as provided in the act. Therefore, we are of the opinion that when the act is construed within its four corners, the county judge had only the power to lease the land for the purpose of clearing it and putting it in cultivation, and that as an incident thereto the lessee might cut and remove the timber from the land so cleared. But we are also of the opinion that the county judge had no power whatever to sell the timber on the remaining part

of the land for the purpose of clearing that which was actually leased. The timber was a part of the land itself, and no authority having been given the county judge by the terms of the act to sell either the land or the timber, his act in so doing was without authority and void.

It does not follow, however, that the plaintiffs have a right to declare the whole contract void. As we have already seen, the county judge had authority to lease the land for the purpose of clearing it and putting it in cultivation, and did not exceed his power in leasing the 200 acres of land to the defendants for that purpose. It was also within his authority to provide in the lease that the lessee should erect a fence around the cleared land and build a tenant house on each forty acres thereof. The defendants testified that they have already, at considerable expense, cleared and put in cultivation some fifty or sixty acres of this land, and it may be that by this time they have cleared the remaining part of the 200 acres, or a considerable portion thereof. Therefore, we hold that if the defendants elect to hold the 200 acres of the land for the five years, and comply with the terms of the lease by clearing the same, fencing it, and building the houses on it, as provided for in the lease, they will be allowed to do so, and plaintiffs will have no just ground of complaint.

Under the authority of *Widner* v. *State,* 49 Ark. 172, a suit would lie in the circuit court to recover the value of the timber illegally cut on the school land, but it is a fundamental principle of equity that when a court of chancery has jurisdiction over a case for any purpose, it may retain the cause for all purposes and proceed to a determination of all the matters at issue. The proof shows that the defendants have sold a considerable portion of the merchantable timber on the remaining part of the section which is not embraced in the 200 acres leased by them, and that they have cut and removed a considerable portion of it. The chancellor is directed to take and state an account of the amount and stumpage value of the merchantable timber so cut and removed from the remaining portion of the section, and may, if he deems it

necessary, appoint a master for that purpose. When the amount and value of the timber is ascertained, judgment should be rendered against the defendants who cut and removed the timber for the amount so found, and the money should be ordered to be deposited for the benefit of the school district, as provided by law.

On the question of the authority of the taxpayers of the school district to bring and maintain this suit, but little need be said. In the case of *Mayers* v. *Byrne,* 19 Ark. 308, certain taxpayers of the school district filed a bill to set aside the sale of a sixteenth section on the alleged grounds of fraud and illegality in the sale. No objection was made to their right to maintain the suit, and the case was determined on its merits. That case is, therefore, authority for the plaintiff to maintain the present suit. So, too, in the case of the *State* v. *Baxter,* 38 Ark. 462, the court held that a suit may be prosecuted by any citizen for himself and other citizens and taxpayers of the county to annul and cancel an illegal and fraudulent lease made by the county judge of the county property.

It follows that the chancellor erred in dismissing the complaint for want of equity, and the decree will be reversed and the cause remanded with directions to the chancellor for further proceedings in accordance with this opinion.