TALLMAN *v.* LEWIS.

Opinion delivered May 1, 1916.

1.   CONTRACTS—STATUTORY PROHIBITION—PUBLIC CONTRACT—RIGHT OF
     TAXPAYER.—Where a contract is expressly prohibited by law, and
     the statute in terms declares the contract to be null and void, no
     recovery can be had under it, and a taxpayer may maintain an
     action to recover back money illegally paid when its officers neg-
     lect or refuse to perform their duty in that respect.

2.   CONTRACTS—BOARD OF IMPROVEMENT—CONTRACT WITH COMMISSIONER.
     —A contract made between the board of improvement of a drain-
     age district, and one of the commissioners, under Act 279, p.
     829, Acts of 1909, is void.

3.   CONTRACTS—STATUTORY PROHIBITION—VALIDITY.—The courts will not
     enforce the provisions of a contract where the consideration there-
     for was based upon, or the contract was against an express pro-
     hibition of the law.

4.   CONTRACTS—STATUTORY PROHIBITION—VALIDITY.—All agreements or
     contracts in contravention of the policy of a legislative act, or in
     contravention of statutes, are illegal and void.

5.   IMPROVEMENT DISTRICTS—CONTRACT WITH COMMISSIONER.—A com-
     missioner of an improvement district can not recover for any
     service performed by him outside of his duty as commissioner.

6.  IMPROVEMENT DISTRICTS—ILLEGAL PAYMENT OF MONEY OF—RECOVERY—
    SUIT BY TAXPAYER.—Where the officers of a drainage district neg-
    lect  to perform their duty in bringing suit to recover money
    illegally paid out by the district, a taxpayer may maintain such
    an action.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Eugene Lankford,* for appellant.

1. The chancery court had no jurisdiction without a showing of fraud upon the county court. 44 Ark. 225; 47 *Id.* 80; 103 *Id.* 16; 105 *Id.* 212; 96 *Id.* 264; 48 *Id.* 544; 110 *Id.* 34; 113 *Id.* 442; 112 *Id.* 91; 170 S. W. 40.

2. No fraud was shown.

3. Act 279, Acts 1909, can not be literally or strictly construed. 106 Ark. 518. If the law is properly construed defendants followed the law. 106 Ark. 39. Tallman was not a *contractor* with the board. He performed the services and was entitled to pay. Kirby's Digest, § 3534; 50 Ark. 83. Also to his necessary expenses.

4. Tallman was entitled to pay for his work regardless of construction of the Act of 1909. It was work outside his duty as commissioner. Thompson on Corporations, § § 1200, 1736, 1747; 96 Ark. 301; 86 *Id.* 613; 60 *Id.* 99; 23 A. & E. Enc. L. (2 ed.) 392, 908.

5. The suit should be dismissed for want of equity. 55 Ark. 633; 92 *Id.* 63; 97 *Id.* 217; 11 *Id.* 378; 65 *Id.* 392; 52 *Id.* 150; 74 *Id.* 252; 8 *Id.* 259.

*Geo. C. Lewis,* for appellee.

1. The compensation was fixed by the act. A commissioner can not be interested in a contract with the district. 110 Ark. 421.

2. The court had jurisdiction. 114 Ark. 299; 33 *Id.* 704; 85 *Id.* 89.

3. Tallman's charges were unlawful, unauthorized and void. 110 Ark. 421. The decree is right.

HART, J.   Geo. C. Lewis, a land owner in Big Island Drainage District No. 8 of Arkansas County, instituted this action in the chancery court against Elliott Tallman,

Louis Buerkle and J. W. Underwood, the commissioners of said drainage district. The object of the suit was to recover from them certain amounts of taxes collected from the land owners in the district which were alleged to have been illegally held by said commissioners and converted to their own use. The material facts are as follows:

The drainage district was duly organized in the fall of 1911, and the commissioners, after being appointed and qualifying as required by the statutes, proceeded upon the work of constructing the improvement provided for. The board let a contract at public bidding for the construction of the drainage ditch. The drainage district was organized under Act 279 of the Acts of 1909. It is conceded that the provisions of the act were complied with in the organization of the district.

Section 4 of the act provides that the board shall prepare plans for the improvement and shall procure estimates from competent engineers as to the cost thereof. It also provides that the board may employ such engineers and other agents as may be needful. No engineer was employed by the commissioners to supervise the construction of the drainage ditch. After the construction of the drainage ditch had been begun, it was deemed advisable by the board that some one should be employed to supervise the construction of it. In January, 1912, the board passed a resolution that E. Tallman, one of the commissioners, be constituted agent to see that all matters pertaining to and connected with the engineering work, construction, up-keep of the ditch, and such other matters connected with the ditch that he may deem would be of benefit to the same. The resolution further provided that he should be allowed $5.00 per day for each day spent at the work, together with all his expenses. Warrants were drawn in favor of Tallman in the sum of $2,014. These warrants were signed by himself as president of the board and by Louis Buerkle as secretary. The warrants were paid out of funds belonging to the district in the hands of the commissioners. $460 was paid him

for attending meetings of the board. About $500 was paid him for the hire of a horse and buggy, at the rate of $3.00 per day. The balance was paid him for services in superintending the work of construction and up-keep of the ditch, at the rate of $5.00 per day.

Tallman testified that, while he furnished his own horse and buggy, he charged less therefor per day than he would have had to pay at a livery stable. He admitted that he was not an engineer, but stated that he understood how to measure the yardage of earth taken from the ditch and that his services were reasonably worth the sum of $5 per day to the district. Buerkle drew $938 for services and expenses. All of this was for attending meetings of the board except the sum of about $250. Underwood was only paid for services in attending the meetings of the board. The chancellor was of the opinion that the board had no authority under the statutes creating the drainage district to make a contract with one of its members. He was also of the opinion that a contract by implication could not arise between parties who are prohibited by law from entering into an express contract. It was agreed that the cause of action as to Buerkle be dismissed without prejudice. The court further found that the defendant Underwood had not drawn any funds from the district to which he was not entitled and the cause as to him was dismissed. The court found that the defendant Tallman had, without authority, drawn from the funds of the district and converted to his own use, the sum of $1,554.00.

A decree was therefore entered in accordance with the opinion and findings of the chancellor. The defendant Tallman alone has appealed, and for that reason we are only concerned with the correctness of the decision of the chancellor as to the issue involved in the suit against him. To reverse the decree in this case reliance is placed upon the decisions in *Smith* v. *Dandridge,* 98 Ark. 38; *Spearman* v. *Texarkana,* 58 Ark. 348; *Frick* v. *Brinkley,* 61 Ark. 397.

In the Dandridge and Spearman cases, there was no statute or ordinance prohibiting the execution of the contract and the rule announced permitted a recovery on the *quantum meruit* where the services contracted for and later performed were proper and necessary, and no unfairness was used or undue advantage taken, in obtaining the contract. In the Spearman case a physician was a member of the board of health and was employed by the board to render services on behalf of the city, which were outside his duties as a member of the board. It was held that while the physician could not enforce any contract made by him with the board of which he was a member, he was entitled to recover compensation for what his services were reasonably worth.

Dandridge was a member of the board of directors of a special school district. The district had entered into a contract for the erection of a school house and the other members of the board thought it necessary to employ some one to supervise the erection of the building. Dandridge was employed to do the work and performed it. The services which he performed were outside of the duties of his office as a director and he was not allowed to recover on the contract made. He was allowed to recover on a *quantum meruit,* it being shown that the amount allowed him for services was no more than his services were fairly and reasonably worth.

In the Frick case, a member of a town council was permitted to recover for the value of certain materials furnished the town, which were used by it. In that case the court called attention to a statute which provided that a member of the council could not be interested, directly or indirectly, in the profits of any contract or job for work or services to be performed for the corporation. The member of the council furnished certain drain tiles, which were used by the town. The court said that it was not necessarily or even reasonably to be considered that the furnishing of the drain tile was a contract for work or services to be performed, such as was contemplated by the statute. The decision in the case was based upon

the rule that where no statute exists on the subject, a contract in which a municipal officer is interested, though against public policy, may be enforced as to the benefits already received by the city.

In each of those cases the contract was considered upon the ground of public policy alone. In such cases the contract, before it is performed, may be avoided by one of the parties because the other party at the time of its execution acted in a fiduciary capacity. When, however, it has been executed without objection and actual benefits have been received under it, all parties acting in entire good faith, the law is maintained and the ends of justice subserved by allowing compensation on the *quantum meruit* or the *quantum valebat* for the reasonable value of the benefits received under it. There is a distinction to be made between a contract which is illegal because its execution requires the performance of an immoral or unlawful act, or transgresses an express statutory prohibition, and one wherein the act to be performed is lawful, but the contract is invalid upon the grounds of public policy alone. The general rule is that when a contract is expressly prohibited by law no court of justice will entertain an action upon it or upon any asserted rights growing out of it. The reason given is that to permit this would be for the law to aid in its own undoing. *Berka* v. *Woodward, Treas,* 125 Cal. 119. The drainage district in question was organized under Act 279 of the Acts of 1909. See Acts of 1909, p. 829. Section 4 of the act provides that each of the commissioners shall take the oath of office required of public officers in this State and shall also, swear that he will not, directly or indirectly, be interested in any contract made by the board. The language used is very broad and comprehensive and its evident purpose was to expressly prohibit a member of the board from entering into a contract made by the board of which he was a member. The statute makes it unlawful for a member of the board to become interested, directly or indirectly, in any contract authorized by the board.

(1)   The general rule is that where a contract is expressly prohibited by law, and the statute in terms declares the contract to be null and void, no recovery can be had under it and that a taxpayer has a right to maintain an action to recover back money illegally paid when its officers neglect or refuse to perform their duty in that respect. *Capron* v. *Hitchcock,* 98 Cal. 427; *West* v. *Berry,* 98 Ga. 402; *Dwight* v. *Palmer,* 74 Ill. 295; *Winchester* v. *Frazer* (Ky.), 43 S. W. 453; *O'Neil* v. *Flannagan,* 98 Me. 426; *Stone* v. *Bevans,* 88 Minn. 127; *Milford* v. *Milford Water Co.,* 124 Pa. St. 610.

(2)   All the cases just cited were based upon statutes which in express terms declare the contracts to be null and void.  While the statute under consideration does not in express terms declare that the contract shall be null and void, it does require the commissioner to make oath that he will not directly or indirectly be interested in any contract made by the board.  So under the statute, a commissioner would violate his oath of office by becoming interested in a contract made by the board of which he was a member.  This amounted to an express prohibition to him and to permit a recovery upon rights growing out of such a contract would in effect abrogate the statute.  The principle is well expressed by the Supreme Court of the United States in *Bank of United States* v. *Owens,* 2 Pet. 527, as follows: "No court of justice can in its nature be made the handmaid of iniquity.  Courts are instituted to carry into effect the laws of a country.  How can they become auxiliary to the consummation of violations of law?  There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal."

Again, the same court in *Coppell* v. *Hall,* 7 Wall. 542, said: "Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case.  No consent of the defendant can neutralize its effect.  A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract and void for the same rea-

sons. Where the contamination reaches it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation.''

(3) The rule is clearly and tersely expressed in the case of *Berka* v. *Woodward,* 125 Cal. 119, as follows: ''Where contracts of public officials, with their counties or municipalities, have not been expressly forbidden by law, the principles which we have been considering have in some cases been applied, and a recovery has been permitted. In these cases it has been said that the demands of public policy have been satisfied by allowing the officer to recover, not according to the terms of his contract, but upon a *quantum meruit* or *quantum valebat.* (*Spearman* v. *Texarkana,* 58 Ark. 348, and other cases cited). But in no one of these cases, nor indeed, in any case which has come under our observation, have the courts entertained any contract, or any rights growing out of a contract, where either the consideration was base, or the contract was against the express prohibition of the law.''

(4-5) In *Brooks* v. *Cooper,* 50 N. J. Eq. 761, 35 Am. St. Rep. 793, the court said that the general rule is, that all agreements or contracts whether sealed or otherwise, in contravention of statutes, are void and all contracts in contravention of the policy of an act of the Legislature are illegal and void. The court further stated that contracts having for their object the violation, defeat, or evasion of a statute are illegal and void. Tested by this rule and the principles of law announced above, the commissioner was not entitled to recover for any service performed by him outside of his duties as commissioner. The court allowed him the compensation provided by statute for his services as commissioner and properly held that he was not entitled to compensation for services performed by him outside of his duties as commissioner.

(6) It is contended that the plaintiff had no legal capacity to sue. The plaintiff was a taxpayer in the district. The suit was brought against the commissioners of the district. So it is evident that the officers of the

district refused or at least neglected to perform their duty in bringing the suit, and in such cases the general rule is that a taxpayer has a right to maintain an action to recover back money illegally paid on behalf of the district. The right of the taxpayer to maintain the action is recognized in the cases above cited. The right of the taxpayer to maintain the action necessarily results from the principles decided in *School District No.* 36 v. *Gladish,* 111 Ark. 329, and *Grooms v. Bartlett,* 123 Ark. 255.

Therefore, the decree will be affirmed.