Brewer *v.* Howell.

5-1171                                   299 S. W. 2d 851

Opinion delivered March 18, 1957.

*Amis Guthridge* and *L. Gene Worsham,* for appellant.

*James F. Sloan, Edwin E. Dunaway,* and *Penix & Penix,* for appellee.

CARLETON HARRIS, Chief Justice. This action was instituted by appellants as taxpayers and residents of Hoxie School District No. 46, seeking the following relief: an injunction against alleged illegal activities by the school board, the recovery of public funds allegedly paid out in violation of the law[1], an order requiring the school board members to meet with appellants, and an order prohibiting the school directors further serving. The last prayer mentioned was contained in paragraphs ten and eleven of the complaint, and was demurred to by appellees. The demurrer was sustained by the court, and the matter was not raised on appeal. Shortly prior to the trial, appellants amended their complaint, alleging a conspiracy between the school board directors and K. E. Vance, superintendent of schools in the district, to defraud said district, and alleging school funds had been wrongfully expended by Vance, and that the directors had otherwise illegally dissipated the funds. The amendment prayed that the directors and Vance be required to give a complete accounting of all cash funds coming into their possession during the school years 1951 through 1954. On motion of appellees, this amendment was stricken from the pleadings. At the conclusion of the hearing, the Chancellor issued a rather lengthy opinion, discussing fully all of the questions in issue. In accordance with his findings, a decree was entered denying appellants all relief sought, except for an order requiring the board to meet with appellants. From such decree, comes this appeal. Appellants rely upon four points for reversal, listed as follows:

## I.

The lower court erred in denying plaintiffs recovery of public funds illegally paid the wives of the school directors.

---

[1] Salaries paid to wives of certain school directors who were employees of the school district and payment for school supplies made to B. B. Vance, a Hoxie merchant, whose son was a member of the school board.

## II.

The lower court erred in denying plaintiffs recovery of public funds paid to B. B. Vance & Sons Lumber Company.

## III.

The lower court erred in denying the plaintiffs injunctive relief against future hiring of relatives in violation of the statute, and against future illegal purchases.

## IV.

The lower court erred in striking plaintiffs second amendment to the complaint.

These will be discussed in the order set out.

## I.

In discussing this contention, it is noted that there are numerous decisions dealing with payments of money made contrary to statute or contrary to public policy. Both appellants and appellees have cited several cases upon which they rely to sustain their position. We shall discuss the leading cases from both viewpoints and apply the principles, therein established, which seem to best fit the facts of this litigation. Appellants rely heavily on *Tallman* v. *Lewis,* 124 Ark. 6, 186 S. W. 296; *Vick Consolidated School District* v. *New,* 208 Ark. 874, 187 S. W. 2d 948; *Ridge* v. *Miller,* 185 Ark. 461, 47 S. W. 2d 587; and *Quattlebaum* v. *Busbea,* 204 Ark. 96, 162 S. W. 2d 44. In *Tallman* v. *Lewis, supra,* Tallman was president of the board of commissioners of a certain drainage district. The act creating the drainage district provided that the board should prepare plans for the improvement of same, procuring estimates from competent engineers as to the cost, and further provided the board could employ such engineers and agents as they might need. The board did not employ an engineer, but deemed it advisable that someone should be employed to supervise the construction of the drainage ditch, and accordingly employed Tallman for that pur-

pose. He drew warrants in the amount of $2,014 which were signed by himself (as president), and the secretary of the board. Tallman admittedly was not an engineer, but testified that he understood how to measure the yardage of dirt taken from the ditch. Suit was brought to compel Tallman to refund the money which he had received because the statute creating the drainage district contained language making it unlawful for a member of the board to become interested, directly or indirectly, in any contract authorized by the board. This Court sustained the contention that Tallman did not have the right to contract with the board, and denied him compensation on a *quantum meruit* basis. In *Vick Consolidated School District* v. *New, supra,* Arthur G. New was employed by the school district as a teacher. It developed that for about a three month period, New had no license of any kind to teach, contrary to Arkansas law, which required "any person who shall teach in a public school in this state without a legal certificate of qualifications to teach shall not be entitled to receive compensation for services from the school fund." The district sought recovery of funds paid to New, and this Court held that his receipt of money during the period when he was without license, was a diversion of public funds, and should be recovered into the public treasury. In *Ridge* v. *Miller, supra,* R. H. Curtis was a member, and president, of the school board. The board entered into a contract to employ Curtis and to lease his truck for the purpose of transporting pupils to and from school. Warrants were issued to him for his services and for use of the truck. After the legislature of 1931 passed an act prohibiting contracts with any member of the school board for the transportation of children, suit was instituted against Curtis, and this Court held that an injunction permanently restraining the treasurer from paying warrants for services rendered (after the passage of the act) should be granted. The case of *Quattlebaum* v. *Busbea, supra,* could not possibly be of any help in the instant case as it involved a matter of falsification of records, deceit, concealment, and, in fact, a conspiracy which was consummated when warrants, showing upon their face that they were for a desig-

nated purpose, were in fact, issued for a wholly different purpose.

Appellees' leading cases are *Spearman* v. *Texarkana,* 58 Ark. 348, 24 S. W. 883; *Frick* v. *Brinkley,* 61 Ark. 397, 33 S. W. 527; *Smith* v. *Dandridge,* 98 Ark. 38, 135 S. W. 800; and *Dowell* v. *School District No. 1, Boone County,* 220 Ark. 828, 250 S. W. 2d 127.

In *Spearman* v. *Texarkana, supra,* Spearman was a medical member of the Board of Health for the city of Texarkana, and while so serving, was directed by the Board to make a personal examination of a case of diphtheria in the city, the alleged existence of which had caused the closing of the schools. He examined the case and made a report to the Board. There was no agreement to pay him for this service, nor did he inform the Board that he expected payment before rendering such service. Several months later, he instituted suit to recover the sum of $50.00. The lower court instructed the jury to the effect that if they found the plaintiff was a member of the Board of Health when he was requested by the Board to perform the services, and that he was a member of the Board when he performed said services, they should find against him. This Court held such instruction to be erroneous, and stated that Spearman was entitled to recover for what he reasonably deserved to have. In *Frick* v. *Brinkley, supra,* Frick was an alderman at Brinkley, and chairman of the Council's Improvement Committee. He was also a dealer in tiling, and entered into an agreement to sell tiling to the city, after which he laid such tiling. Subsequently, after a change in the composition of the Council, the town instituted suit against Frick to recover the amount thus paid him. Among other grounds for recovery, the issue was raised that Frick, as a member of the Council, and chairman of its Improvement Committee, could not contract with the town. From a judgment against him, Frick appealed. This Court held that Frick had acted in good faith, that the relief sought should not be granted, and accordingly reversed the judgment of the lower court and entered judgment for Frick. In *Smith* v. *Dan-*

*dridge, supra,* G. G. Dandridge was one of the directors of the school district, and accepted employment by the district as superintendent of a school construction job. This Court held that the services were necessary, were for the benefit of the school district, were duly performed by Dandridge, the amount of his claim was fair and reasonable, and Dandridge was entitled to payment for such services. In *Dowell* v. *School District No. 1, Boone County, supra,* Dowell alleged that two of the school directors had been interested in the private sale of supplies to the school district, sought an injunction to prevent further sales, and prayed the return to the district of all monies received by each director. The Chancellor enjoined the directors from having any future private financial dealings with the school district, but refused to adjudge the return of the money to the district for past transactions. The oath of the school directors is, in part, " * * * I will not be interested, directly or indirectly, in any contract made by the district of which I am a director, except that said contract be for materials bought on open competitive bid, and let to the lowest bidder * * *"[2] This Court held that such language meant a school director should not make private sales to the district, and upheld the injunction which had been granted; however, it also sustained the lower court's decision in refusing to require the repayment of the money received by the directors, holding that the district received full and fair value on items purchased.

Admittedly, these decisions, which from a cursory examination might seem to be conflicting in some respects, draw a fine line, and it is accordingly necessary that we examine the facts of this particular case in order to determine which line of decisions applies.

In the instant matter, Mrs. Guy Floyd, Mrs. L. L. Cochran, and Mrs. Leslie Howell, (whose husbands were school directors), were employed by the Board, the first two as teachers, and the latter as cafeteria supervisor. Ark. Statute § 80-509, in defining the duties of the school board, provides, among other things, as follows:

---

[2] 80-505, Ark. Stats. (1947) Anno.

"(d) Employ such teachers and other employees as may be necessary for the proper conduct of the public schools of the district, and to make written contracts with teachers and all other employees in the form prescribed by the State Board of Education. There shall be four (4) copies of each contract made; one (1) to be retained by the Board; one (1) to be given to the employee; one (1) to be filed with the County Supervisor of Schools. Neither the husband nor wife of a school director, nor any person related within the fourth degree of consanguinity or affinity to any member of the school board shall be employed by the school board in any capacity except as follows:

"(1) Teachers may be elected upon written petition of fifty (50) percent of the qualified electors from the group constituting the parents of the grade group or groups to be taught by the teacher in question for the school year for which the election is made.

"(2) Other employees may be elected upon written petition of fifty (50) percent of the qualified white electors of the district for white applicants, * * *."

This is the statute upon which appellants rely in seeking a recovery of funds paid to these employees. Admittedly, none of the defendant employees originally had obtained such petitions. Shortly before the filing of the lawsuit, Mrs. Cochran ceased teaching, and shortly after the filing of the lawsuit, Mrs. Howell voluntarily terminated her employment. Mrs. Floyd submitted her petition as required by law, and it is not contended that she is presently teaching illegally. Let us compare this factual situation with the cases just mentioned, first looking at appellant's cases. In *Tallman* v. *Lewis, supra,* Tallman was president of the Board of Commissioners, and was accordingly contracting with himself. He even had to sign his own warrants. Nor was he qualified for the services that he rendered inasmuch as the statute contemplated the hiring of an engineer. Tallman was not an engineer. In *Vick Consolidated School District* v. *New, supra,* New had no teacher's license, accordingly was not qualified to teach under our law, and the statute

*expressly prohibited such a person from receiving any compensation from the school fund.* In *Ridge* v. *Miller, supra,* the statute specifically declared that a contract with any member of the school board for the transportation of children *"shall be null and void."* These factual situations are therefore quite different from the one presently before the Court. No one has questioned the qualifications of these employees in the positions for which they were employed. Mrs. Cochran and Mrs. Floyd were, according to the record, apparently fully capable and experienced in their tasks. The Statute *does not prohibit wives of school directors from teaching,* nor does it provide that one so teaching shall not receive compensation. It is true that provision is made for obtaining the petition (heretofore referred to), but the legislature did not see fit to declare such a contract void because this required petition had not been obtained. Nor can it be said that these ladies contracted with themselves, and certainly it is not established that their husbands received the benefit of their salaries. No fraud was involved in employing these persons; in fact, the applications showed that they were related to members of the board, and one might well surmise that it was common knowledge among the parents in the school district that these people were so employed. Yet, no action was taken for several years, and not until other matters arose which occasioned strong feelings. No contention is made that these employees were overpaid. The salaries were most moderate, and, in fact, were not as high as those paid in the adjoining school at Walnut Ridge. All in all, it would appear that the parties acted in good faith.

Appellants state that the courts will not entertain any contract or rights growing out of same where such contract is expressly prohibited by law. In the case of *Frick* v. *Brinkley, supra,* (relied upon by the Chancellor in this litigation), the law provided as follows: "Nor shall any alderman or any member (of council) be interested, directly or indirectly, in the profits of any job, work, or services, to be performed for the corporation." The court there held that Frick's contract was irregular

and not in accordance with a mandatory statute; yet, as previously mentioned, this Court entered judgment for Frick. In both *Smith* v. *Dandridge, supra,* and *Dowell* v. *School District No. 1, Boone County, supra,* this Court upheld payments which had been made to members of the Board who rendered services or sold supplies to the district, and not on open and competitive bid, as required by law. The acts of these directors, were, of course, in direct conflict with the oath of office which they had taken.

While we are unable to lay down a "hard and fast" rule that can be followed in every case, this line of decisions seems more apt and fitting to the present situation. Quoting from *Smith* v. *Dandridge, supra,* relative to services Dandridge performed, and for which he received the warrant as payment: "* * * there is no claim made that there was any fraudulent dealing, either in selecting him to perform the services or in the amount of the claim therefor which he made; it is not claimed that the amount allowed him for the services is more than the services were fairly and reasonably worth. Under these circumstances, we think that he is justly and equitably entitled to payment for such services."

The above expresses our thought in the instant matter, and we hold that the Chancellor was correct in denying appellants relief on this point.

## II.

Howard Vance, a member of the school board, is a son of B. B. Vance, a Hoxie merchant. The proof shows that B. B. Vance has sold supplies which would average about $1,000 per year (for the last several years) to the school district. Appellants contend that this was a violation of Ark. Statute § 80-505 (heretofore set out). Let it first be said that we agree with the trial court that purchases made from a business concern employing a school board member are not in violation of the law, for such director is not interested "either directly or indirectly" as is contemplated by the statute. While it is admitted that the name of the concern is

advertised as B. B. Vance and Sons, the proof is uncontradicted that B. B. Vance is the sole owner of the business.[3] The concern is not a partnership, nor a corporation. Howard Vance and two other brothers are only employees. In his opinion, the Chancellor mentioned an example, which is perhaps extreme, but could well happen. "* * * if a member of a school board happened to be the employee of a railroad company and the school sent its athletic team somewhere and bought tickets, this school board member, being an employee of the railroad company, would be interested either directly or indirectly; * * *." While our views, as so expressed, dispose of this contention, let it also be said that we find the Chancellor was correct in holding that the preponderance of the evidence establishes that fair prices were charged by B. B. Vance, and value received by the district. Mr. Cecil Grissom, a competitor of Vance, and who had sold lesser amounts to the district, was asked about numerous items purchased by the district from Vance. His testimony was to the effect that the prices were fair and reasonable. The cases that we have cited under heading I, as controlling on that point, apply with equal force here. The Chancellor was correct in denying relief.

### III.

It has already been stated that the action of the Board, in employing wives of the directors who had not obtained petitions as provided by the statute, was a violation of the law. The proof showed that this practice had been engaged in for several years, and though the contracts were entered into in good faith, still the directors were guilty of violating the law. While the Board has announced a policy discontinuing this practice for the future, the School Directors are presumed to have been familiar with the fact that they had already violated the law; the best evidence for obtaining

---

[3] The regular Chancellor, who disqualified in this case, and who represented B. B. Vance, filing returns, etc., before assuming his judicial duties, testified to this fact, and it is stipulated that his present attorney would also so testify. This corroborated the testimony of Howard Vance.

an injunction is the evidence of prior violations. For this Court to say that no injunction should be granted, might well be construed to the effect that we had placed our stamp of approval upon the actions of the Board in employing the wives. Nothing could be more erroneous. The law should be complied with, and in such respect, this case is similar to that of *Dowell* v. *School District No. 1, Boone County, supra.* In that case, the Chancellor, though refusing to order the directors to return the money which had been paid to them, did enjoin them from having any further private financial dealings with the school district. We think such action appropriate in the instant case, and are of the opinion that the Chancellor should have enjoined the defendant school board members from employing their wives.

## IV.

The matter of permitting amendments to pleadings is one that lies largely within the discretion of the trial court. *Austin* v. *Dermott Canning Co.*, 182 Ark. 1128, 34 S. W. 2d 773. This particular case was tried on an exchange between the regular Chancellor and the Chancellor from the Thirteenth Chancery Circuit. The lawsuit was originally filed October 3, 1955, and the amendment in question was filed January 24, 1956, two weeks before the date previously fixed for the trial of the case. Undoubtedly, to have permitted the amendment, (which did raise new issues) would have necessitated a resetting of the cause, and this would have been particularly inconvenient to a Chancellor on exchange who had already set his own docket. The matters raised in the amendment were important, but we cannot say that the Chancellor abused his discretion in striking same from the pleadings. Nothing herein shall be construed as such a determination of the matters set forth in said amendment as to make same *res judicata*; in fact, we make no finding at all, except to simply hold that the Chancellor was within his rights in refusing to consider the amendment in the instant lawsuit.

In passing, we might mention appellee's contention that appellant's suit is barred by the "clean hands" doc-

trine. Appellees have pleaded that this litigation was filed by appellants solely for the purpose of intimidating the said appellees and coercing them into re-establishing segregation in the Hoxie schools. While it may be true that the integration issue stirred the feelings of the inhabitants of the district, and caused them to look into school matters with more scrutiny than theretofore, we find no merit in the contention. Violations of law, as herein mentioned, had occurred. Efforts to meet with the board members, according to testimony of appellants, had failed, and there were *bona fide* reasons for instituting the suit. The Chancellor was correct in ruling against appellees on this point.

In accordance with this opinion, the case is remanded to the Chancellor with directions to restrain the defendant school directors from employing their wives in any capacity for the district, until said wives have complied with provisions of Sub-sections (d-a) (d-b) of § 80-509, and the provisions of § 80-511 of Ark. Statutes (1947) Annotated. With such modification, the decree of the Chancellor, in all respects, is affirmed.