Lu Hardin, President University of Central Arkansas 201 Donaghey Avenue Conway, AR 72035-3001
Dear President Hardin:
You have presented the following questions for my opinion:
 (1) Does a member of the Board of Trustees who owns shares of stock in a financial institution (or a holding company owning such financial institution) that is awarded the banking services business pursuant to a sealed, competitive bid, "become interested, either directly or indirectly, in any contract made by the board" under A.C.A. § 6-67-102(f)(1)?
 (2) If the answer to Question 1 is "yes," is there a percentage ownership of stock in the financial institution when the board member would not "become interested, either directly or indirectly, in any contract made by the board" under A.C.A. § 6-67-102(f)(1)?
 (3) Does a member of the Board of Trustees who is an officer of a financial institution that is awarded the banking services business pursuant to a sealed, competitive bid," become interested, either directly or indirectly, in any contract made by the board" under A.C.A. § 6-67-102(f)(1)?
Response
Question 1 — Does a member of the Board of Trustees who owns shares ofstock in a financial institution (or a holding company owning suchfinancial institution) that is awarded the banking services businesspursuant to a sealed, competitive bid, "become interested, either directlyor indirectly, in any contract made by the board" under A.C.A. §6-67-102(f)(1)?
It is my opinion that a University board member who owns shares of stock in a company that does business with the University does "become interested, either directly or indirectly, in any contract made by the board" under A.C.A. § 6-67-102(f)(1).
The provisions of A.C.A. § 6-67-101 et seq. govern certain matters about the organization of the University of Central Arkansas. The particular provision that has given rise to your question is A.C.A. §6-67-102(f)(1), which concerns the board of directors of the University. That section states:
 (f)(1) Before entering upon his respective duties, each board member shall take and subscribe, and file in the office of the Secretary of State, an oath to support the Constitution of the United States and the Constitution of the State of Arkansas and to faithfully perform the duties of the office upon which he is about to enter, and that he will not be or become interested, directly or indirectly, in any contract made by the board.
A.C.A. § 6-67-102(f)(1) (emphasis added).
The phrase "interested, directly or indirectly," as used in the above-quoted provision, is not further explained or defined, nor have the Arkansas courts interpreted this language as used in the context of this statute. The most helpful guidance in interpreting this language comes from a case in which the Arkansas Supreme Court construed similar statutory language: Brewer v. Howell, 227 Ark. 517, 299 S.W.2d 851
(1957).
The statutory language that was at issue in Brewer was the precursor to the statute now codified at A.C.A. § 6-13-617, which applied to school board members. It required school board members to take an oath that they would not be "interested directly or indirectly in any contract made by the district[.]" The case involved a challenge based on purchases made by a school district from a business that employed one of the school board members. The court rejected the challenge and held that the oath had not been violated, because the school board member in question was merely an employee of the business.
I have recently relied upon Brewer to conclude that that mere employment
of a member of the board of the University of Central Arkansas by a company with whom the University does business will not likely be deemed to constitute a violation of A.C.A. § 6-67-102(f)(1). See Op. Att'y Gen. No. 2003-149.
Certain language of the court in Brewer tends to indicate, in contrast, that if a board member holds an ownership interest in a company with whom the University conducts business, as opposed to being merely an employee of the company, that board member will be deemed by the court to be in violation of the oath required by A.C.A. § 6-67-102(f)(1). In particular, the Brewer court noted that the name of the company by which the board member in question was employed was "B.B. Vance and Sons." The board member's father was B.B. Vance, and the board member was Howard Vance, one of the sons. Regarding this fact, the court stated:
 While it is admitted that the name of the concern is advertised as B.B. Vance and Sons, the proof is uncontradicted that B.B. Vance [the board member's father] is the sole owner of the business. [Footnote omitted.] The concern is not a partnership, nor a corporation. Howard Vance and two other brothers are only employees.
227 Ark. at 525 (emphasis added).
The sentence emphasized above tends to indicate that if the board member in question had held an ownership interest in the business, the court would have concluded that he was "interested, directly or indirectly" in purchases made by the school district from the business.
This language from Brewer leads me to conclude that ownership by a member of the board of the University of Central Arkansas of stock in a financial institution with which the University does business constitutes a violation of the oath required by A.C.A. § 6-67-102(f)(1).
Question 2 — If the answer to Question 1 is "yes," is there a percentageownership of stock in the financial institution when the board memberwould not "become interested, either directly or indirectly, in anycontract made by the board" under A.C.A. § 6-67-102(f)(1)?
It is my opinion that although a percentage of stock ownership could, under the facts of a particular situation, be so small as to constitute a harmless de minimus interest, the better rule of practice would be to interpret the language of the oath just as it reads. That language, as it is stated, broadly prohibits any interest — direct or indirect — in a company with which the University does business.
Question 3 — Does a member of the Board of Trustees who is an officer ofa financial institution that is awarded the banking services businesspursuant to a sealed, competitive bid, "become interested, either directlyor indirectly, in any contract made by the board" under A.C.A. §6-67-102(f)(1)?
It is my opinion, for the reasons stated in response to Questions 1 and 2, that a board member's position of officer in a company with which the University does business constitutes the type of direct or indirect interest that is prohibited by A.C.A. § 6-67-102(f)(1), and the situation should therefore be avoided.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General