FRICK *v.* BRINKLEY.

Opinion delivered December 21, 1895.

MUNICIPAL CORPORATION—CONTRACT WITH MEMBER OF COUNCIL,—A
municipal corporation which has purchased drain tiles for a neces-
sary public improvement from a member of its council for a fair
price, and paid for them, cannot retain the tiles and at the same
time recover from the seller the amount of his profits realized
from the sale, although the contract was not made in the manner
required by law.

Appeal from Monroe Circuit Court.

GRANT GREEN, JR., Judge.

*H. A. & J. R. Parker,* for appellant.

To enter into a contract, the ayes and nays must be
called and recorded. Sand. & H. Dig. sec. 5157. But,
to appropriate money for any purpose, the ayes and
nays are not necessary. *Ib.* sec. 5165. A contract with
an alderman is not *void*, the only inhibition being that
they shall not be allowed to make a profit. *Ib.* sec.
5166. A town council *has power* to dig ditches and put
in tiling to drain the town, and the contract was not
*ultra vires*. 58 Ark. 270 ; 40 *id.* 105. The vote delegat-
ing the power to the improvement committee to put in
the tiling was by ayes and nays ; and the committee was
the agent of the town to put down the tiling. 96 U. S.
341 ; 1 Dillon, Mun. Corp. sec. 96 (3 ed.); Herman on
Estoppel, sec. 1225. This was a simple sale of tiling,
and not a "job" or "contract," within the statute. The
town having paid with full knowledge, although illegal,
it was a voluntary payment, and cannot be recovered.
2 Herm. Est. sec. 1053, p. 1182 ; *Ib.* sec. 1165, p. 1299.

2. The town, having received the benefit, cannot
repudiate it, or plead *ultra vires*. 2 Herman, Estoppel,
sec. 1178, 1222–3–4–5, etc.; 36 Ark. 577 ; 48 *id.* 254 ;

Beach, Pub. Corp. secs. 224 to 227 and 629. The town must do justice. *Ib.* sec. 226, etc.; 58 Ark. 348.

3.   There is no question of profit in the case, as the tiling was sold at *actual cost*.

4.   There is a clear distinction between executory contracts and those executed. 28 S. W. 1053; 9 Cal. 453; 80 Tex. 578; 38 N. E. 238. As to when unauthorized contracts are ratified, see 1 Dill. Mun. Corp. secs. 463-4-5, and notes. A contract not *ultra vires* may be ratified.     19 Pick. 487; 37 Conn. 578; Mansf. Dig. sec. 760.

5.   The first and second declarations of law are objectionable, because (1) not applicable, and (2) not the law. Mansf. Dig. sec. 924, which limits sec. 774 *id.*

6.   The court's finding of facts was without any evidence to support it.

*W. T. Tucker* and *M. J. Manning* for appellee.

1.   Sand. & H. Dig. sec. 5166 is simply declaratory of the law as it existed before its passage. 61 N. Y. 444; Dillon, Mun. Corp. sec. 444; 91 Ind. 478; 44 Cal. 106; 87 *id.* 597; 25 Wis. 551; 74 *id.* 295. The contract was void.

2.   The resolution was not passed by a majority of the council. Sand. & H. Dig. sec. 5157. Nor were the ayes and nays called and recorded. 40 Ark. 105; Dillon, Mun. Corp. sec. 291; Sand. & H. Dig. sec. 5165.

3.   When money is illegally appropriated, the courts will give restitution. 52 Ark. 541.

4.   The town is not estopped by the unauthorized acts of its agents. 39 Ark. 580; 42 *id.* 118. Nor is it responsible for the mistakes or unlawful acts of its officers. 40 Ark. 251.

5.   A void contract cannot be ratified.

BUNN, C. J. The town council of Brinkley resolved, in the regular way, by a yea and nay vote, and

by a majority of all the members elected to the council, to lay sewer piping along its streets for the purpose of drainage. Subsequently, it resolved to lay this piping along certain streets and certain blocks, presumably as an installment of the general work. This resolution does not seem to have been adopted by a majority of all the members elected to the council, nor by a yea and nay vote. The mayor, however, as authorized by the last named resolution, proceeded to advertise for bids to furnish the piping or tiling necessary to accomplish the object in hand; and, receiving no bids from any one, a number of citizens interested appealed to the council to purchase the necessary tiling and have the work done at once. At this juncture, the appellant, who was an alderman and chairman of the council improvement committee, and who was a dealer in tiling, but who seems not to have taken any part in the council's proceedings, offered to sell the necessary porous tiling, at the rate of $1.10 per foot, worth, as he afterwards testified, 95 cents per foot actual value, at that place. Under the circumstances the mayor accepted this offer, and the appellant laid the tiling, and made the openings and connections, and made no charge for his labor in the matter. The evidence is to the effect, that the kind of tiling thus sold to the town was worth 95 cents, actual value delivered at Brinkley, and $1.10 mercantile value. for this tiling the town council ratified the payment of the sum of $840 to appellant, being according to the price per foot agreed upon as aforesaid, by approving the account of the treasurer to that effect.

Subsequently, after a change in the composition of the council had been made, the town instituted this action against appellant to recover back the whole amount thus paid him, on the ground that the purchase was made without authority on the part of the town, and because appellant, as a member of the council and

chairman of its improvement committee, could not contract with the town.

The evidence adduced to show that the price given for the tiling was excessive seems to have had reference altogether to a different class of tiling, and therefore was not contradictory of appellant's testimony as to the value of the tiling actually sold and laid. Some effort was made to show that the piping, as laid, did not properly answer the ends designed, but the testimony as to that is not satisfactory enough to be seriously considered in determining the particular issue made in this proceeding.

The court below made three declarations of law bearing on the subject, as follows, to-wit: (1) "That in all contracts for payment of money, votes must be taken by yeas and nays, and that a member of council cannot make a contract with town and share in the profits. (2) That a town may ratify the act of its agent by accepting property purchased, if the corporation has the power to make the contract. (3) That a town has the right to contract to drain its streets." With proper explanations, there does not seem to be any substantial error in these declarations of law.

As to the first, the last clause of section 5166, Sandels & Hill's Digest reads as follows : "Nor shall any alderman or member (of council) be interested, directly or indirectly, in the profits of any contract or job for work or services to be performed for the corporation." Presumably, this declaration of law was based upon this clause of the statute. If so, it is not certain that it was not erroneous, for the sale made by the appellant to the town, is not necessarily or even reasonably to be considered a "contract or job for work or services to be performed," as is contemplated by the statute. In enacting this clause, the legislature evidently had in mind an abuse that had grown up, whereby public

officials became the recipients of the unusually large profits, made on public contracts for work and services to be performed as a fulfillment of the contracts. Sales were not generally the subject of such abuses, for unfairness of price, as well as inferiority of quality, are of too easy detection to encourage such. But since, by the common law, a trustee or agent is not permitted to enjoy profits which rightfully belong to his *cestui qui trust* or principal, the court's declaration of law, looking at it from that standpoint, may not be materially wrong.

There is no serious objection to the second declaration, except that ratification, as a principle, may not be exactly applicable to the case in hand, because, generally speaking, ratification of a contract must be after the same formalities as are requisite in making it in the first instance. Another doctrine may, however, cure any defects of this declaration in this regard.

The third declaration is indisputably correct, for to deny a town the right or power to drain its streets would be to denude it of the very privilege of decent existence.

Upon these declarations of law, and the testimony, the court below refused to adjudge a repayment of the actual value of the piping, but rendered judgment against defendant, Frick, for what it found to be the profits, to-wit: the sum of $219.50. We do not think the evidence supports the findings of the court as to the amount of the profits. The piping was shown to be of the actual value of 95 cents per foot, and the fair selling price of $1.10. The difference, 15 cents per foot, therefore, represents the profit, and for the 784 feet the sum of $117.60.

It may be conceded that, while the council had power to purchase the piping, its method of making or authorizing the contract of purchase was irregular, and

not in accordance with a statute which is mandatory on the subject. We need not discuss the question as if the town was without power to purchase and lay the tiling, or inquire what would be the consequences to appellant, were there no such power in the town.

Our concern now is to determine what must be the consequences to the parties in the case as made and presented to us; that is, where there is a failure to comply with the forms of law in an attempt to exercise a power which the town possessed. In other words, where the contract made is not void in the strict sense, but only voidable, and where it has been fully executed by both parties, and the object of the litigation, is, in effect, to annul and rescind it.

In *Town of Searcy* v. *Yarnell*, 47 Ark. 269, a similar question, in many of its aspects, was presented and determined by this court. There the town of Searcy, a stockholder and principal owner of the stock in a corporation owning and operating a horse car wooden tramway connecting that town with the Iron Mountain railroad, three or four miles in length, sold the same to the two Yarnell brothers, one of whom was, at the time the sale to them was first suggested, a member of the town council, but who resigned immediately, presumably that he might be free to consummate the purchase with his brother from the town. No question of profits arose in that case, except, perhaps, by inference, and no such question was discussed, for the very good reason, doubtless, that whatever profits there might have been in the transaction were the direct and legitimate results of the expenditure of money and labor and exercise of intelligent foresight and management of the Yarnells subsequently to the purchase and delivery of possession to them, and in no true sense belonged to the town. In that case, the sale having been shown to be fair to the town, the Yarnells having shown that they had

fully and honestly complied with their part of the contract, and it appearing that a restoration was impossible, at least impracticable, and the whole matter executed, the court declined to interfere when such interference could have done nothing more than to commit a great injustice and that too for the sole and only purpose of asserting and putting in force a mere technical rule. In that case the private persons were the purchasers from the town, and the question of *ultra vires* could only arise on the proposition of the right of the town council to sell, not to buy. Otherwise that case and this one are not materially different.

It appears to us that the sale of the piping in this case was fair as to price and quality, that there was at least an urgent demand for the improvement to be made at the time, that it fairly answered the ends designed, and that the town is still enjoying its use and benefits; and, therefore, we think it cannot, in good conscience, be allowed to receive the value back, while at the same time it is enjoying the benefits of its purchase,—at all events, when it does not even offer to restore that which it claims could not have been its property, and consequently is not now its own.

This is not the assertion of any right which the appellant has, nor any obligation resting upon the appellee, under the contract of purchase, but it is a rule of justice and right growing out of an implied contract and obligation of every one, whether natural or artificial person, to restore to another that which belongs to him, and that is in the possession of the former or in his power to restore ; and when the power to restore does not exist, or when the restoration, in the nature of things, becomes impracticable, then to be precluded from recovering back the fair price paid. Beach, Pub. Corp. sec. 217. In such cases as this, the sole duty of the courts seems to be to see that the public corporation suffers no

material loss nor injustice, but further than this they could but inflict burdens upon others more or less disastrous, where no resulting good can follow—a thing courts of justice ought not to indulge in.

As to the common law rule that an agent ought not to take unto himself the profits of a contract or transaction which properly belongs to his principal, while, by a strained construction, it may be made to apply to this case, yet we cannot see that the town has lost anything whatever by making the purchase from appellant, or that it could have got the same class of piping elsewhere, or from any one else, at a less cost. He seems to have acted in good faith, and it does not appear that he can be placed in *statu quo*, or that it is the intention of the town to attempt it. Under the circumstances, any judgment against him would be in the nature of a penalty for a seeming breach of his relationship to the town. Such a penalty might be inflicted in a proper case, but not upon one who has acted in good faith.

We make no ruling as to what might be the judgment here, were this contract executory; but, as it has been fully executed, and its annulment is now all that is called for, we simply hold that we cannot grant the relief sought, except on the principles of right and justice, and these are not with the plaintiff in this case.

The judgment is reversed, and judgment will be entered here for appellant.