Lorene C. Diver, Appellant, v. Keokuk Savings Bank, City of Keokuk, Keokuk Construction Co., E. P. McManus, and George S. Tucker, Appellees.

126 691
127 472
126 691
128 86

126 601
138 85

**Special assessments:** NOTICE: REPEAL OF STATUTES. The repeal of a statute by implication is not favored in law, and where two statutes covering in whole or in part the same subject are not absolutely irreconcilable and a purpose of repeal is not clearly expressed or indicated, effect if possible will be given to both. Under this rule, Code, section 971, relative to notices in cases of special assessments is not repealed and section 823 substituted therefor by chapter 29, Acts Twenty-eighth General Assembly, but the former is applicable to cities under special charter, and the latter to cities organized under the general law.

**Validity of municipal improvement contracts.** The provisions of a paving contract requiring the contractor to pay all damage arising from the work; to leave all permanent streets, walks and alleys in as good condition as when found; to indemnify the city against claims arising from injury to person or property on account of the work; to pay all injury to water, gas and sewer pipes; and to keep the pavement in repair for one year, do not invalidate the contract.

**Same.** The provisions of a paving contract limiting the contractor's right in the employment of help and purchase of material are invalid, but a property owner who made no objection to the same until after the work was done and the benefit accrued cannot complain thereof, where it affirmatively appears that the cost of the work was not thereby increased.

**Paving contract:** VALIDITY: INTEREST OF COUNCILMAN. After a municipal improvement has been made and accepted by the city, a taxpayer, in the absence of actual fraud, cannot resist payment therefor because of a violation of Code, section 943, prohibiting a member of the council from being interested in any contract for such work.

*Appeal from Des Moines District Court.*— Hon. James D. Smythe, Judge.

Tuesday, February 14, 1905.

ACTION in equity to enjoin and restrain the collection of certain assessment certificates issued by the defendant city for certain street improvements adjacent to plaintiff's property. The trial court dismissed the petition, and plaintiff appeals.— *Affirmed.*

*F. M. Ballinger* and *William Timberman,* for appellant.

*H. R. Collins* and *Hughes & Sawyer,* for appellees.

DEEMER, J.— Plaintiff is the owner of certain property in the city of Keokuk. In September of the year 1902 a resolution was introduced before the city council of that city for the paving and curbing of a street and alley in front of, and abutting on, plaintiff's property. On October 6th of the same year this resolution was passed by a vote of nine to three; defendant Tucker, who was an alderman, voting in the affirmative. The city engineer was thereupon directed to prepare and file a plat and estimate of the cost of the improvement, and the city clerk was ordered to publish notice of the intention of the city council to make the improvement. The engineer filed his plat, and estimated the cost of the improvement of the alley to be $1,080, and of the street to be $7,050. The notice of intention was duly published as required by section 965 of the Code. On November 3d a resolution ordering the paving, etc., and directing the engineer to advertise for bids, was passed by a vote of ten to two; Tucker also voting in favor thereof. Notice to contractors for bids was duly published, and, pursuant thereto, two bids were filed — one by Cameron & McManus, aggregating $8,603, and the other by the Keokuk Construction Company, a partnership composed of McManus and defendant Tucker, aggregating $7,537. The bid of the Keokuk Construction Company, being the lowest, was accepted, and by resolution the contract was awarded to it. The vote on this resolution was unanimous; Tucker not voting, however.

Work was commenced in March, 1903.   The city employed an inspector, who supervised the work, and the improvement was completed, and accepted by the city, within the time provided for by the contract.   A resolution was thereupon passed for the assessment of the cost thereof against the property abutting thereon, and the city clerk was directed to give notice thereof as required by law.   The vote on this was unanimous, Tucker voting therefor.   Notice of the proposed assessment was duly published as required by section 971 of the Code.   No objections having been filed to the proposed assessments, they were confirmed by unanimous vote of the council on the 6th day of July, 1903; Tucker voting therefor.   Certificates were thereupon issued to the construction company, which in turn, assigned those against plaintiff's property to the Keokuk Savings Bank.   The total of the assessments against plaintiff's property was $367.86.   Plaintiff and her husband, who was her agent, knew that the improvement was being made by the city, had constructive notice of all that the published notices imparted, and, we are satisfied from the evidence, knew that it was proposed to assess the cost thereof against her property from the beginning.   Neither she nor her husband made any objections thereto until about the time this suit was commenced, which was in August of the year 1903.

The plans and specifications for the improvement, as wall as the contract itself, required the contractor to sustain all loss or damage arising out of the nature of the work to be done, and required him to keep the pavement in repair for the period of one year, to keep and employ on the work only citizens and residents of the city of Keokuk, and to purchase all materials of Keokuk manufacturers or Keokuk merchants, so far as practicable.   He was also required to leave in as good condition as when found all pavements, sidewalks, and improvements along the line of the street to be paved.

Plaintiff contends that the entire proceedings were irregular, void, and of no effect, in that, first, the city did not

give the notice required by section 823 of the Code; second, the contract is void because of the special provisions therein to which we have just called attention; and, third, the original resolution and all proceedings thereunder are void because of the conduct and vote of Alderman Tucker, who was one of the partners in the construction company to which the contract was let, and was directly interested in the work to be performed.

There is some contention between counsel as to the right of plaintiff to bring an action to enjoin the collection of these assessment certificates; but we take it that if the proceedings were wholly void, for want of notice or for any other reason, and not simply irregular, the action will lie. *Gallaher v. Garland,* 126 Iowa, 206.

I.    The first proposition presented is the sufficiency of the notices given by the city.    Keokuk is acting under a special charter, and it is admitted that it religiously followed the

1. SPECIAL AS-    provisions of sections 965 to 979, inclusive, of
SESSMENTS:    the Code, which provide a complete scheme
notice; re-
peal of stat-
utes.    for street improvements in such cities. · It gave

all the notices therein required, and no fault is found with its procedure thereunder, save that plaintiff contends that section 971 was either expressly or impliedly repealed by chapter 29, page 14, Acts Twenty-eighth General Assembly, and that section 823 of the Code was the only one in existence relating to notice after the filing of the plat and schedule for the reassessment.    Section 971 reads as follows:

After filing the plat and schedule referred to in section 820, chapter 7, of this title, the council shall direct the clerk or recorder to give ten days' notice by publishing same three times in a newspaper published in said city, that such plat and schedule are on file in the office of the clerk, fixing a time within which all objections thereto or to the prior proceedings must be made in writing, and the council having heard the objections and made the necessary corrections shall levy the special assessments as shown in such plat and schedule.

Section 823 reads in this wise:

After filing the plat and schedule, the council shall give notice by two publications in each of two newspapers published in the city if there be that number, otherwise in one, and by hand bills posted in conspicuous places along the line of such street improvement or sewer. That said plat or schedule are on file in the office of the clerk, and that within twenty (20) days after the first publication of all objections thereto, or to the prior proceedings, on account of errors, irregularities or inequalities, must be made in writing and filed with the clerk; and the council having heard such objections and made the necessary corrections, shall then make the special assessment as shown in said plat and schedule as corrected and approved.

This latter section, when originally adopted, was not intended to apply to special charter cities, but only to those acting under the general incorporation law. But the Twenty-Eighth General Assembly passed an act (page 14, chapter 29) relating to the levy and collection of special assessments, which it is claimed repealed section 971, and substituted 823 in place thereof. If this be true, it follows that the city did not comply with the law, and perhaps had no jurisdiction to make the assessment. This chapter 29 was evidently passed to meet the decision of the United States Supreme Court in *Norwood v. Baker,* 19 Sup. Ct. 187 (43 L. Ed. 443) and provides for assessments according to benefits, and that they shall at no time exceed twenty-five per cent. of the actual value of the property assessed. It also provides for the payment of the deficiency, if any there shall be, out of the general funds of the city. Further provision is made for the payment in like manner of the cost of an improvement in front of property against which no special assessment can be made. Section 3 of the act provides that, so far as applicable, section 823 of the Code, and other sections (naming them), should govern special assessments in all cities, including those acting under special

charters, " unless otherwise specially provided." It also pro-
vided that upon appeal the court should determine the ques-
tion of benefits to the property assessed.

There was no express repeal of any section of the Code,
and, if there be a repeal, it must be held to result from
implication. Such repeals are not favored in law; and when
two statutes cover, in whole or in part, the same matter, and
are not absolutely irreconcilable, no purpose of repeal being
clearly expressed or indicated, it is the duty of a court, if
possible, to give effect to both. It will not be presumed that
the Legislature intended a repeal of a prior statute by a later
one on the same subject, unless the last statute is so broad in
its terms, and so clear and explicit in its words, as to show
that it was intended to cover the whole subject, and there-
fore to displace the prior statute. *Casey v. Harned,* 5 Iowa,
1; *Sherman v. Des Moines,* 100 Iowa, 88; *Cole v. Supervi-
sors,* 11 Iowa, 552; *State v. Shaw,* 28 Iowa, 67; *Lambe v.
McCormick,* 116 Iowa, 169; *Phillips v. City,* 63 Iowa, 578;
*Arnold v. City,* 85 Iowa, 441. Prior to the enactment of
this chapter, there were two complete schemes for the im-
provement of public streets and alleys — one for cities act-
ing under the general incorporation laws, and the other
for cities acting under special charters. The act referred
to is by its terms made applicable to special charter cities,
and doubtless section 823 might have been made appli-
cable thereto. Indeed, we should be inclined to hold that it
was, but for this significant expression found in section 3 of
the act: "Unless otherwise specially provided." We are
not justified in reading these words out of the statute, and
must give them significance, if it is possible to do so on any
reasonable and consistent theory. There is, as it seems to
us, a perfectly reasonable and plausible explanation thereof.
As already observed, there were two complete schemes for
street improvements like that in question, and two only; one
relating to cities in general, and the other to special charter
cities. In one, section 823, relating to notice, was found;

and in the other, section 971, relating to the same subject. Section 3, page 15, chapter 29, Acts Twenty-Eighth General Assembly, provides in effect, that section 823 shall not apply when the matter covered thereby is otherwise specially provided for. This last clause could only have reference to the notice provided in such cases for special charter cities. In those cities notice after the filing of the plat and schedule was specially provided for in section 971. So that section 823 does not apply. This holding gives effect to every word in either of the statutes, and has the merit of avoiding a repeal by implication, which, as we have already seen, should be avoided. Section 823 then relates to notice in cities acting under the general law, and section 971 to those acting under special charters.

Claim is made that, if this be true, there was no need for section 3 of chapter 29. This same argument would also apply to the other sections named. We apprehend that the section found its way into the act by reason of a desire on the part of the Legislature to avoid trenching upon the general scheme of public improvement in its effort to provide for assessment according to benefits, instead of by the front-foot rule, to meet the apparent holding of the Supreme Court of the United States in the *Norwood Case, supra.* Like many other sections found in our laws, it was introduced as a safety clause, and not for the purpose of changing existing laws any further than was necessary to accomplish the object then in hand. But in so doing the Legislature in this instance also clearly evinced an intent not to disturb other special provisions relating to the same subject. This it did by the use of the words already referred to. Remembering that all legislation with reference to special charter cities is, in a sense, special, and applicable to them alone, we think we can see a reason for the introduction of the exception. This is the only possible occasion for the use of the language so many times quoted, and, remembering our duty in the premises, we must hold, as already indicated, that section

971 has not been repealed, and that the notice given in this case of the proposed assessment was sufficient.

II.   Coming now to the next point, the alleged invalidity of the contract by reason of some of its provisions, we have a different inquiry — one based on an entirely distinct premise.   These objections go to the validity or legality of the contract.   The first, to that part of the contract requiring the contractor to meet all loss or damage arising out of the nature of the work done, and to repair or replace, and leave in as good a condition as when found, all permanent sidewalks, streets, alleys, etc., is entirely without merit.  These simply imposed a duty already implied as of law, and added nothing to the contractor's obligations.   There are also two other provisions of the same general character, which should be treated in the same way.   One was for indemnity to the city from all suits or claims growing out of injury or damage to person or property by reason of the work to be done, and the other obligating the contractor to pay for all injuries done to water, gas, or sewer pipes.   The other objections have already been disposed of by prior decisions of this court.   Thus in *Osburn v. Lyons,* 104 Iowa, 160, and *Allen v. Davenport,* 107 Iowa, 90, we held that a stipulation requiring the contractor to keep the pavement in repair for the space of one year did not invalidate the contract.   It was there treated as in the nature of a guaranty or warranty of the quality of work.   There are cases holding to a contrary doctrine, but we are satisfied with our rule, and are not inclined to depart from it now.   Appellant attempts to distinguish these cases, but, in our judgment, they are not distinguishable.   The repairs contemplated were evidently those caused either by defective workmanship or material.   A pavement which needed repair in one year would surely be defective.   See, also, on this point, and as sustaining our rule, *Cole v. People,* 161 Ill. 16 (43 N. E. 607); *Robertson*

*2. Validity of Municipal Improvement Contracts.*

*v. Omaha,* 55 Neb. 718 (76 N. W. 442; 44 L. R. A. 534);
*Latham v. Wilmette,* 168 Ill. 153 (48 N. E. 311).

The provisions as to what laborers should be hired, and
as to where material should be purchased, were, no doubt,
invalid.    But the evidence affirmatively shows that they did
not in any manner increase the cost price of
3. SAME.              the work.    This being true, the plaintiff hav-
ing made no objection to the contract until after the work
was done, she is in no position, after having received the
benefits of the contract, to object thereto.    *E. & W. Co. v.
Jasper Co.,* 117 Iowa, 369; *Chadwick v. Kelly,* 187 U. S.
540 (23 Sup. Ct. 175, 47 L. Ed. 293); *Treat v. People,* 195
Ill. 196 (62 N. E. 891).    There are other reasons why
these objections should not be allowed to prevail.    At most,
they made the contract voidable, and not void.    Plaintiff
did not appear, in response to the notices, to file objections
either to the proposed improvement, the contract there-
for, or to the assessment.    Having failed to do so, as she
might have done, under the statute, she cannot now be heard
to complain.    In most if not all of the cases relied upon by
appellant, objections were lodged at a proper time — while
the contract was executory, and before any benefits had ac-
crued thereunder, or any expenditures made.    As the contract
was, at most, merely voidable, plaintiff was bound to make her
objections at a proper time, and she could not wait until after
the work was done, and then come into a court of equity and
attempt to avoid payment for the same.    This is fundamen-
tal doctrine, sustained by the following among other cases:
*Minneapolis, etc., v. Lindquist,* 119 Iowa, 144; *Ferguson v.
Board,* 119 Iowa, 338; *Johnson v. Kessler,* 76 Iowa, 411;
*Crawford v. Polk Co.,* 112 Iowa, 118; *Marion Co. v. Marion,*
121 Iowa, 306.    Appellant says that she did not know the city
proposed to assess the cost of the work, or any part thereof,
against her property, but this claim is distinctively negatived
by the testimony.

III.    Section 943 of the Code provides that no member

of the city council shall be interested, directly or indirectly, in any contract for work or services, to be performed by the corporation. No specific penalties are provided for violation of this section, nor is it declared what effect such violation shall have upon the prohibited contracts. It is clearly shown that Tucker was a member of the council when this work was ordered, and when it was done. All the propositions, however, were carried by the necessary vote after rejecting the one cast by Tucker, so that the proceedings themselves were not affected by his vote. It is the contract alone which is affected by the section referred to. Tucker was directly interested in the work to be done, through his connection with the Keokuk Construction Company. ·There is some claim here of actual fraud in the organization of this company; that is to say, it is contended that this name was taken by the firm of which he was a member for the purpose of concealing his interest in the transaction, but this is not borne out by the evidence. There was no actual fraud in the transaction. What was done in this connection may readily be accounted for, in the light of the testimony, on the theory of honesty of purpose, and we are not justified in such cases in inferring fraud. So that we have the simple question, what effect shall be given this section, in its bearing upon the contract? Many decisions have been announced on somewhat similar prohibitions, which we shall not undertake to review. Suffice it to say that decisions under statutes expressly making such contracts void may readily be distinguished from those which we shall cite. We shall assume that the construction company could not have brought suit on its contract against the city while the same remained executory in character. And we may also concede that any one interested might during this time have challenged the contract in proper and timely proceedings for that purpose. But the question here presented is much broader than this. It is this: May a taxpayer, after the work has been performed, and accepted by the city —

<div style="margin-note">4. PAVING CONTRACT: validity; interest of councilman.</div>

there being no actual fraud shown — successfully resist payment therefor because of a violation of section 943 of the Code? That question was decided adversely to appellant in *Kagy v. Independent Dist.*, 117 Iowa, 694, where the cases from other jurisdictions are examined and commented upon. See, also, to the same point, *Roberts v. Bank*, 8 N. D. 504 (79 N. W. Rep. 1049); *Pickett v. School Dist.*, 25 Wis. 551 (3 Am. Rep. 105); *Schenley v. Allegheny*, 36 Pa. 29 (78 Am. Dec. 359); *Beaser v. Paving Co.* (Wis.), 98 N. W. Rep. 525; *Currie v. School Dist.*, 35 Minn. 163 (27 N. W. Rep. 922); *Frink v. Brinkley*, 61 Ark. 397 (33 S. W. Rep. 527); *Gardner v. Butler*, 30 N. J. Eq. 702; *Concordia v. Hagaman*, 1 Kan. App. 35 (41 Pac. Rep. 133); *Field v. Barber Co.*, 194 U. S. 618 (24 Sup. Ct. 784, 48 L. Ed. 1142). While some of the cases cited by appellant seem to support her contention, most if not all of them are based on the language of the statutes construed. In some of them the remarks made by the judges writing the opinions were obiter, and in others a rule was announced which does not commend itself to a chancellor who at all times is seeking to do equity.

We have now considered all the points made, and find no reversible error. The motions submitted with the case are without merit, and they are each overruled. The decree is right, and it is *affirmed*.