HOME MUTUAL FIRE INSURANCE COMPANY

v. GERALD CARTMELL

4616                                    430 S.W. 2d 849

Opinion delivered September 3, 1968

*Estes & Brazil* for appellant.

*Van H. Albertson* for appellee.

J. FRED JONES, Justice.   Gerald Cartmell sued the Home Mutual Fire Insurance Company in the Madison County Circuit Court on an insurance policy for damage caused by lightning to the foundation of a house under construction.   Judgment was entered in favor of Cartmell on a jury verdict for $371.48.   Statutory penalty of 12% and attorney's fee in the amount of $250 was assessed against the insurance company, and it appeals to this court relying on the following point for reversal:

"1.   The court erred in refusing to give appellant's offered instruction No. 4 which directed the jury to return a verdict for the appellant.

"2. The court erred in allowing appellee to introduce the opinion of Sol Stevens as an expert as to what caused the damage.

"3. The court erred in allowing Mr. Sol Stevens to testify as an expert."

Cartmell contends that the damage was caused by lightning, within the coverage of his insurance contract, and the company contends that the damage was caused by water, within the exclusionary clause. This entire case turns on the fact question of whether the damage complained of was caused by lightning. The jury found that it was, so the question before this court on appeal is whether there was any substantial evidence to support the finding of the jury, and we conclude that there was.

The record before us reveals the following facts: In August, 1964, Mr. Cartmell had under construction a house 72 feet long and 26 feet wide. The house was being built on a little knoll with the length of the house running north and south and the front facing east. The natural drainage was to the west. A full basement for the house had been excavated the entire length of the house with a bulldozer and a concrete basement floor had been poured. The east and west walls of the basement, which also constituted the foundation for the house, had been constructed against the verticle side walls of the excavation, with twelve inch by sixteen inch concrete blocks laid eleven blocks high. The construction of a chimney and fireplace had been started in the center of the basement and this construction had proceeded to the floor level of the house. The house itself had been constructed on this foundation and was 75% complete when the workmen quit for the day on August 17, 1964.

When the construction was begun, prior to August 17, Mr. Cartmell obtained an insurance policy from the appellant insuring the house up to $10,000 against dam-

age caused by windstorm and lightning, but excluding damage caused by high water or overflow, whether driven by wind or not. On the night of August 17, an electrical rainstorm occurred in the vicinity and when the workmen returned to the house on the morning of August 18, a part of the west wall of the basement, or the west foundation of the house, was down inside the basement and mud and some water was in the basement.

At the trial, Mr. Cartmell testified as follows:

"Q. Now, on the morning of the 18th day of August, did you notice any damage to your house?

A. I sure did. The west wall was blowed plum out of it.

Q. Now, you're talking about the basement wall?

A. That's right, the basement wall.

Q. When you say it was blown out, clarify that a little for the jury, will you?

A. Well, there was two hundred and thirty blocks busted all to pieces and they were busted to pieces across the basement wall, twenty-six feet.

\* \* \*

Q. What was the general condition of the basement when you observed it on the morning of the 18th, other than the blocks being scattered around?

A. It was just a mess.

Q. Did you notice anything outside the house?

A. Well, there was — .

Q. On the west side of the house?

A. Well, there was a hole there.

Q. How large was the hole?

A. Oh, probably three foot in diameter.

Q. Where was the hole?

A. About the center of the basement wall.

* * *

Q. This hole you saw near the septic tank on the west side of the house, what did it look like to you? ?

A. It was a hole about three foot in diameter right where the plumbing come out of the west wall.

Q. Had you or any of the workmen dug such a hole there?

A. No, sir.

Q. And you've testified that there was damage to the plumbing also?

A. Yes. sir, there were some Ts that were busted where the — and an elbow, I think. Mr. Markley, he replaced that. He was doing the plumbing at the time.

Q. Do you know of your own knowledge know[sic] whether or not there was an electrical storm the night of the 17th?

A. Yes, sir, there was. There was here in Huntsville. I lived in Huntsville then in the basement of the Western Shop."

Mr. Stevens, a stonemason who was in the process of building a fireplace and chimney in the center of the basement, testified as follows:

"Q. All right, . . . would you tell us what the condition of the wall was? Was it standing up

straight or was some of the blocks broken or — go into that.

A. Well, I would say that three-fourths of them was broke all to pieces and was scattered all over the inside of the basement.

Q. Now, what else was in the basement other than the blocks?

A. Well, there was some mud.

* * *

Q. Have you seen the results of lightning striking various objects?

A. I have.

Q. Did you examine the damage or did you go along the west side of the Cartmell house?

A. I did.

Q. What did you notice there?

A. Well, they was quite a pothole there, different to what it was the night before. And it looked like the mud had went plum in and it had sprayed on my fireplace footing.

* * *

Q. What, in your opinion, caused the damage?

* * *

A. Well, I can say this, it wasn't compression against the wall.

Q. Well, what, in your opinion, caused the damage?

* * *

A. If it wasn't lightning, I wouldn't know what it was."

In determining whether or not the trial court erred in its failure to direct a verdict, we must take that view

of the evidence which is most favorable to the party against whom the directed verdict is requested, and if there is any substantial evidence tending to establish the issue in favor of the party against whom the request is made, it is not error for the court to refuse the request but would be error for the court to take the case from the jury. In testing whether or not there is any substantial evidence in a given case, the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the request is made; and, if there is any conflict in the evidence, or where the evidence is not in dispute but is in such a state that fairminded men might draw different conclusions therefrom, the motion for a directed verdict should be denied and the cause submitted to the jury under proper instructions. *Huffman Wholesale Supply Co.* v. *Terry,* 240 Ark. 399, 399 S.W. 2d 658.

The trial court properly instructed the jury as to circumstantial evidence and the burden of proof in this case, and we conclude that there was substantial evidence from which the jury could have concluded, as it apparently did, that the damage was caused by lightning. This court will not reverse the verdict of a jury as to factual issues if the jury could have found as it did, from the evidence presented *Southern Farm Bureau Cas. Ins. Co.* v. *Brigance,* 234 Ark. 172, 351 S.W. 2d 417; *Arkansas Motor Coaches, Ltd.* v. *Williams,* 196 Ark. 48, 116 S.W. 2d 585.

As to Mr. Stevens' testimony, he had had sixteen years experience in building concrete block walls. He observed the damaged wall and was qualified to testify that in his opinion the wall did not fall because of compression against the wall. In testifying that he did not know what damaged the wall unless it was lightning, Mr. Stevens did not qualify, neither did he testify as an expert on lightning, that the wall was struck by lightning —he testified from inspection and observation that there was no compression against the wall and that he didn't

know what caused the damage unless it was lightning. Mr. Stevens was qualified to give the opinion he did give, based on his experience and observation as to what *did not cause* the damage.

There is no question that a heavy rainstorm, attended by severe lightning, occurred in the vicinity of the house on the night of August 17. The evidence offered by the appellant tended to prove that the damage was caused by high water. The evidence as to what caused the damage was definitely in dispute in this case and we conclude that the conflicting evidence was such that fair-minded men could draw different conclusions therefrom. It was for the jury to determine from *all the evidence* what *did* cause the damage, and we are of the opinion that there was substantial evidence to support the jury in reaching the verdict that it did.

Judgment affirmed.