# THE YELLOW CAB COMPANY *v.*
## Charles SANDERS et al

5-5534                                        465 S. W. 2d 324

## Opinion delivered April 12, 1971

*Wright, Lindsey & Jennings,* for appellant.

*Howell, Price, Howell & Barron,* for appellees.

*Joseph A. Madey,* for cross appellant Charles Hunt.

Lyle Brown, Justice. Charles Sanders and Leola Sanders, his wife, obtained judgments as a result of a traffic mishap which resulted in serious injuries. The judgments were against appellants, Charles Hunt and The Yellow Cab Company. Yellow Cab insists there

was no substantial evidence of negligence on the part of its driver which contributed to plaintiffs' injuries. Charles Hunt made Yellow Cab a third-party defendant but the jury awarded Hunt no damages against Yellow Cab, from which Hunt appeals. He contends (a) that the verdict was inconsistent, (b) that Charles Sanders was contributorily negligent and the jury did not consider that fact, and (c) that the court should have granted Hunt's motion for a mistrial.

The accident occurred at the intersection of Roosevelt Road and Center Street in Little Rock. Roosevelt Road runs east and west and is a four-lane boulevard. Center is a narrow street and there are stop signs which command traffic crossing Roosevelt from Center to stop before entering. As the Sanderses traveled east on Roosevelt and approached the intersection a yellow cab was stopped at the north entrance of Center to Roosevelt; on the south side of Roosevelt, Hunt had pulled up and stopped. The cab driver intended to turn east (to his left) and Hunt intended to turn west (to his left) on Roosevelt. Those two drivers were not directly facing each other as they were parked on their respective sides of Center Street. That is because there is an offset or jog which would place Hunt some twelve feet east of the cab on the opposite side of the street. Hunt testified that as he pulled out he intended to go directly across the south half of Roosevelt (Sanders' lane of travel) and then turn left; that he was prevented from doing so because the yellow cab moved about the same time as did Hunt and forced Hunt to cut sharply to his left to avoid the cab; and that as he made that movement he hit Sanders' car almost head-on. The cab driver insisted that he never moved from his position at the stop sign and that the impact of the two cars caused the Hunt car to slide backward and to make very slight contact with Yellow Cab's bumper.

Charles Sanders testified that he was driving east on Roosevelt, about 30-35 miles per hour; and that just before he reached the Center Street crossing Hunt "just pulled out in front of me." Sanders said he did not see

the yellow cab, that he was looking straight ahead and at the Hunt car.

Maggie Hunt, who lives near the Center Street crossing, heard the crash. She is Charles Hunt's wife. She said she looked out and saw the cab and her husband's car in proximity of each other. She went back into the house to cut off the gas on the kitchen stove, and started toward the wreck. When she got back out on her porch she said the cab was backing away from the scene.

Officer E. J. Ethridge arrived minutes after the accident. He found the impact to have originated near the center of Roosevelt Road. The accident occurred on a dry day and at about 3:00 p.m. The officer said he observed the cab parked some thirty to forty feet back from the intersection. The cab driver reported to the officer that he saw the accident. Officer Ethridge said that the cab driver never mentioned that contact was made with the cab.

The cab driver was M. W. Poole, Jr. He testified that he was still parked at the stop sign on Center Street and south of Roosevelt when the accident occurred. He insisted that his cab was parked with the front end of the cab behind the curb line. He said the impact, which occurred west of him, caused the cars to slide toward him and "one of the vehicles slid down into the intersection on my side of the street and it touched against my car. I felt it touch my bumper and it slid away from it and when I got out I checked to see if there had been any damage and there hadn't been any." He said he called his dispatcher and was instructed to stay at the scene until the policeman approved his leaving. He said he did not move his car until he left the scene.

On cross-examination the witness conceded that in trying to get out into the traffic he probably moved his cab slightly forward to get a better view. He said his cab was struck a slight and glancing blow on the bumper. He testified that he did not report the contact to the investigating officer because there was no damage. He recalled that either his boss (who came to the scene) or

the officer asked him to move the cab backward because traffic was being blocked.

Whether Yellow Cab was negligent and whether any such negligence was a proximate cause presents the first question to be decided. Yellow Cab argues that it was, as a matter of law, entitled to a directed verdict. In testing the correctness of Yellow Cab's position we view the evidence and all reasonable inferences in the light most favorable to the other parties. *Home Mutual Fire Ins. Co. v. Cartmell,* 245 Ark. 45, 430 S. W. 2d 849 (1968). The fact that the evidence is contradicted by Yellow Cab, "or the fact that we might think it was against the preponderance of the evidence, does not justify us in setting aside the verdict." *Arkansas Motor Coaches v. Williams,* 196 Ark. 48, 116 S. W. 2d 585 (1938). Of course we look for substantial evidence and if it is insubstantial Yellow Cab is entitled to prevail.

Hunt testified positively that as he pulled out from Center Street he started directly across the south lane of Roosevelt Road (Sanders' lane of traffic); that he was prevented from following that course of travel by the cab, which suddenly moved out and blocked the north lane of Roosevelt; and that the collision with Sanders was inevitable. If the jury believed Maggie Hunt's testimony they could have concluded that the cab was well out in Roosevelt when the crash occurred and that the cab immediately thereafter backed away from the wreck and for a considerable distance. The cab driver insisted that he was inside the curb line on his side when the collision occurred; yet on cross-examination he admitted that he may have moved forward somewhat in order to get a better view of the traffic. For reasons known only to the cab driver, he did not report to the officer that the Hunt car came in contact with the bumper of the cab. The jury may have attached some significance to the fact that the cab driver was instructed by radio to remain at the scene, notwithstanding he claims not to have been involved in the wreck. The owner of the cab company came to the scene of the accident, yet his driver claims to have been a mere witness to the collision. Also, we can tell from the record that the collision was recon-

structed on some type of blackboard and witnesses explained their versions of the occurrence on the board. The jury had the benefit of those reproductions while we do not. Then of course the jury had the advantage of seeing and hearing the witnesses, which is often a crucial factor in passing upon credibility. We are unable to say that fair-minded men would draw but one conclusion from the highly controverted evidence. Therefore we agree with the trial court that the facts and circumstances made a question for the jury.

The jury was given a general verdict form, which read: "We the jury find for the plaintiffs Charles Sanders and Leola Sanders against Charles Hunt and Yellow Cab Company and assess their damages as follows: Leola Sanders _____, Charles Sanders, _____." The jury returned that form of verdict but they amended it to apportion damages between Charles Hunt and Yellow Cab Company:

*Charles Hunt*

| | |
|---|---|
| Charles Sanders | $46,665.00 |
| Leola Sanders | 5,721.00 |

*Yellow Cab Co.*

| | |
|---|---|
| Charles Sanders | 3,335.00 |
| Leola Sanders | 409.00 |

Yellow Cab argues that it was within the discretion of the trial court to reject the verdict as not being in conformity with the court's instructions to return a general verdict. Since the court accepted the verdict, says Yellow Cab, it should be entered as apportioned, which would mean that there could be no recovery greater than the smallest amount fixed by the jury. *Woodward* v. *Blythe*, 249 Ark. 793, 462 S. W. 2d 205. The court entered a joint and several judgment for the combined total damages, having concluded that the jury actually intended to apportion the negligence. The apportionment of damages was not made an issue by Yellow Cab in its original brief. It was raised as a point of error for the first time in its reply brief. Since it was not timely advanced in order that appellees could rebut it in their brief, we cannot consider it. *Ryall* v. *Water-*

*works Improvement District,* 247 Ark. 739, 447 S. W. 2d 341.

Now as to the appeal of Charles Hunt. He never filed a notice of appeal. The timely filing of such a notice is jurisdictional, both on appeal and cross-appeal. *Pinnacle Old Line Ins. Co.* v. *Ellis,* 228 Ark. 458, 307 S. W. 2d 882 (1957); *General Box Co.* v. *Scurlock,* 223 Ark. 967, 271 S. W. 2d 40 (1954). Nevertheless we have examined Hunt's points for reversal and a majority of the court finds no merit.

Affirmed.