Ted R. McCUISTION and Robert M. McCUISTION
v. CITY OF SILOAM SPRINGS, ARKANSAS et al

78-231                                      594 S.W. 2d 233
Supreme Court of Arkansas
Opinion delivered March 3, 1980

*Pearson & Woodruff,* by: *Ronald G. Woodruff & P. Karen Pope,* for appellants.

*Kelly, Luffman & Matthews, P.A.,* by: *Eugene Kelley* and *Mary Elizabeth Matthews,* for appellees.

FRANK HOLT, Justice. Appellants financed and constructed a sewer line in Siloam Springs which they claim was pursuant to a contract whereby appellee city agreed to collect charges from individuals and businesses tying onto the line and remit those charged to appellants for fifteen years as reimbursement for appellants' construction of the line. At the end of the fifteen year period, title to the line would vest in the city. When the city failed to remit these charges, appellants filed suit against it for breach of contract seeking judgment for all fees or charges collected from third parties or, in the alternative, recovery of $40,000 (cost of construction) on the basis of unjust enrichment. They also sought injunctive relief to prevent appellee Apartment House Builders, Inc., from connecting its units. Based on interrogatories, the jury found there was a written contract between appellants and the city, and the contract was approved by the city council. It awarded the appellants $25,000 on the breach of contract claim against the city and found that $2,500 was a reasonable charge for Builders tying onto the sewer line. The court sustained the city's and Builders' motions for judgment notwithstanding the verdict and set aside the jury verdict. Appellants seek reinstatement of the verdict as to the city only.

Appellants first contend that the trial court erred in finding there was no substantial evidence to support the jury's finding that a written contract existed between the city and the appellants. It is well settled that the trial court may enter judgment notwithstanding the verdict only if there is no substantial evidence to support the jury verdict, and one party is entitled by law to a judgment in his favor. *Westside Motors* v. *Curtis,* 256 Ark. 237, 506 S.W. 2d 563 (1974); and *Spink* v. *Mourton,* 235 Ark. 919, 362 S.W. 2d 665 (1962). On appeal we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party against whom the judgment notwithstanding the verdict was entered. See *Westside Motors* v. *Curtis, supra;* and *Home Mutual Fire Insurance Co.* v. *Cartmell,* 245 Ark. 45, 430 S.W. 2d 849 (1968).

We review the uncontradicted evidence concerning the existence of a contract. Appellant Ted McCuistion testified

that the sewer line was constructed by the appellants in 1969. The 3,750' sewer line terminated at and serviced property he owned for development purposes. According to the agreement, the city was to collect and pay the appellants for enumerated tie or tap-in charges for a period of fifteen years to apply on reimbursement of appellants' costs. Apellants' title to the line would revert to the city at the end of that period of time. He and his brother, Robert, had signed three copies of the contract in the office of the city attorney, who drafted the contract and also took it to the city hall for "signature[s]." He either saw the executed copies or the city attorney (his attorney also) told him they were approved. He was never furnished an executed copy. Robert corroborated Ted's testimony that they had signed the asserted sewer project agreement although he could not remember seeing any other signature. It is not disputed that appellants constructed the sewer line according to the city's specifications. The city clerk testified that she was to withhold certain sewer tie-on charges or tap fees in a separate account pending the outcome of the present litigation and, further, that sometimes the city paid tap fees to a construction contractor. The clerk and a member of the city council testified there was an agreement by the city to absorb the cost difference between an 8" pipe (agreed to during the initial negotiations) and a 10" pipe (later agreed to on advice of the city engineer). The city council's minutes corroborated this agreed change. This same council member testified that he thought the original agreement was written up in contract form, and he was "sure" that he had seen it. He found no record of the contract or of a resolution by the council authorizing the mayor and city clerk or recorder to enter into the contract. A former mayor (not the mayor at the inception of the project when the conracts would have been signed) testified that he assumed that there was a signed contract. There is evidence that the city aided the appellants in the construction of the sewer line by procuring easements, furnishing manholes and paying for engineering services. There was no profit made (as the jury found) by the appellants. Normally the city would approve this type of contract. The city has been collecting and retaining the tap-on fees. It appears no one denies the existence of the asserted contract. When we view the evidence most favorably with all reasonable inferences deducible therefrom in favor of the

appellants, we hold there is substantial evidence to support a finding that the asserted contract existed between the parties.

Even so, appellee city argues that the contract was not formally authorized or approved by the city council as required by Ark. Stat. Ann. § 19-2311 (Repl. 1968). Therefore recovery is barred on appellants' theory of unjust enrichment or quantum meruit. Even though it is an unenforceable contract for lack of authorization, it does not preclude a recovery on these theories. *Revis* v. *Harris,* 219 Ark. 586, 243 S.W. 2d 747 (1951); *Gladson* v. *Wilson,* 196 Ark. 996, 120 S.W. 2d 732 (1938); *International Harvester Co.* v. *Searcy County,* 136 Ark. 209, 206 S.W. 312 (1918); *Smith* v. *Dandridge,* 98 Ark. 38, 135 S.W. 800 (1911); and *Frick* v. *Brinkley,* 61 Ark. 397, 33 S.W. 527 (1894). See also *Day* v. *City of Malvern,* 195 Ark. 804, 114 S.W. 2d 459 (1938). These cases, in effect, hold that a void or illegal contract does not necessarily prevent recovery. In other words, a party cannot retain the benefits of a defective contract and at the same time avoid paying for these benefits. Here, however, as we construe the interrogatories, the issue of unjust enrichment, which would have been based upon the value to the city and not the value to the appellants, was never presented to the jury. Also it appears the court refused to submit instructions on implied contract and quantum meruit.

However, as previously indicated, there is substantial evidence that a contract existed. We must, therefore, look to the terms of the contract for any measure of damages due the appellants. The contract provided that for fifteen years the city would collect and pay to appellants all charges from those connecting onto the sewer line. Appellant Ted McCuistion testified there was to be a $500 tie-on fee for each residential connection, $1,500 for each commercial installation and $2,500 for a laundry connection. An Exxon station, Scarbrough Ford and Tri-State Ford were tied on. It appears appellants would have received $4,500 for these connections. A fee of $500 was collected from Herford Manor Apartments as the total due on the multi-unit apartment complex. The jury found, however, the charge should have been $2,500 (an additional $2,000). Although the clerk testified that she was holding tap-on fees in the amount of $750 in a separate account, it is unclear as to what part of the above fees, if any,

were included in that account. Clearly, under the terms of the contract, the $25,000 jury verdict in favor of the appellants is unsupported by the evidence as to tap-on charges collected by the city. Viewing the evidence most favorably, the total award would justify at the most $7,750.

If this amount is accepted within 17 calendar days, the verdict is reinstated to that extent. Otherwise the judgment is reversed and the cause remanded with the right of appellants, upon proper proof at a retrial, to submit the issue of unjust enrichment, implied or quasi contract, to the jury.

Reversed and remanded.

FOGLEMAN, C.J., and PURTLE, concur.

JOHN A. FOGLEMAN, Chief Justice, concurring. This case has some rather unusual features which are perplexing and difficult to deal with on the abstracted record. Appellants alleged in their complaint that the contract between them and the city called for the city to collect and receive all monthly sewer fees or charges required to be paid by users of the sewer line which appellants agreed to construct, to collect and receive all charges made to others for connecting to the line and to remit all such fees and charges to appellants for 15 years, after the passage of which the sewer line would become the property of the city. They admit that the city had performed its obligations to provide the manholes on the line, to furnish and pay for engineering services, to obtain and furnish necessary easements from third parties, and to pay the difference in cost of the ten-inch line the city desired and the eight-inch line appellants had agreed to construct, but that the city had collected large sums of money for connection fees or charges and had refused to pay them to appellants. They asserted in their complaint that, if the contract for construction could not be established or enforced, they were entitled to judgment for $40,000 on the basis that the city had been unjustly enriched in that amount. According to the testimony of appellants, $40,000 was the amount it cost them to build the line, although it seems that some of the items included in arriving at this figure were questionable. Their prayer was to recover the amounts collected by the city, or, in the alter-

native, $40,000 for unjust enrichment. The city denied the existence of any contract with appellants concerning a sewer line, pleaded the statute of frauds and the statute of limitations and pleaded that the contract was ultra vires.

Helen Allum, the City Clerk of the City of Siloam Springs, testified that the only reference to a sewer line construction by the McCuistions was the city's agreement to absorb the difference in the cost of the pipe for a ten-inch line and for an eight-inch line. She could find no record of a contract involving the city and the McCuistions. She had collected $750 in tap-on fees which she was holding in a separate account. She said that the city had collected $500 for a sewer connection for Hartford Manor. Not only did she find no record of a contract with the McCuistions, she found no record of any resolution authorizing the Mayor and City Clerk to enter into a contract with them.

Ted McCuistion testified that sometime between October, 1968 and February, 1969, he and his brother Robert signed three copies of a contract in the office of their attorney Carl Bonner, who was also the city attorney. Ted McCuistion never had a copy of the contract signed by the city officials. He thought he saw the executed contracts in Bonner's office. He either saw them or Bonner told him they had been executed. He couldn't say specifically that he did see the contracts. Even though Ted McCuistion was a member of the city council, and attended meetings regularly when he was in town, he recalled the approval of the change in the pipe size from eight to ten inches, but never became suspicious because the council never brought up the contract. He had never asked Bonner for a copy of the contract, but had asked Bonner for all his papers.

Robert McCuistion said that he and Ted had signed the contract in their own office and that Bonner had drafted it. He had not seen it since he signed it and did not know whether the city signed it. Bob Henry, Mayor of Siloam Springs in 1962 and in 1973, and at other times a councilman, never saw a written contract between appellants and the city. He said that there was no discussion of the McCuistion sewer construction before the council when he was

mayor or was on the council, and, during that time, sewer contracts were in writing and approved by the council. William Jamison had been mayor from 1968-1970, when the sewer construction was supposed to have taken place. He had no recollection of any negotiations with appellants and could not recall ever seeing a signed contract. According to him, a project of that nature would normally be handled through the Water and Sewer Commission and then brought to the council for approval. He testified that it was not possible that the contract could have been signed without going through the council procedure while he was in office. He said that the project had already been started by the McCuistions when he came into office.

Charles Brown was on the city council during 1968 and 1969. He was aware of the construction of the sewer and, as chairman of the Water and Sewer Committee, discussed the arrangements with the McCuistions and the engineer employed by the city, which he said was the customary arrangement under which the developer paid for the line and installed it according to specifications provided by the city's engineers, and recovered some or all of his money, depending on the connections made within the next ten or fifteen years. He said that these types of arrangements were submitted to the city council and stated that he would have sworn that this contract was in the council minutes, but that he had been unable to find anything in the minutes except the reference to a change in the size of the line. He felt sure the McCuistions were to receive connection fees for either ten or fifteen years, but he was not sure that "it was written up in contract form."

All these witnesses were called by appellants. No witnesses were called by appellees. The jury answered interrogatories submitted by the court. The material ones were answered as follows:

### INTERROGATORY NO. 1

Was there a written contract between an agent of the City of Siloam Springs and the McCuistion brothers?

Yes

## INTERROGATORY NO. 2

If your answer to question one is yes, was that contract authorized or approved by the City Council?

Yes

## INTERROGATORY NO. 4

If your answer to question three is yes, were the terms of the contract such that Ted McCuistion was to receive a profit?

No

## INTERROGATORY NO. 5

If your answer to question four is no and to questions one, two and three is yes, what, by the terms of the agreement should the City of Siloam Springs have charged Apartment House Builders, Inc. for tying on the sewer line?

$2,500

## INTERROGATORY NO. 6

If you find that there was an agreement between the City of Siloam Springs and the McCuistions, which agreement induced the McCuistions to construct a sewer line, and that the City did accept any benefits from the construction of said line, then you should determine the fair and reasonable value of the benefits which McCuistions would have received under the contract. What is that amount?

$25,000

"Sewer line and all tap fees reverted to the City of Siloam Springs."

I would have to agree with the trial judge that there was no substantial evidence that the city had entered into a written contract with appellants. There certainly is no evidence that the contract was authorized or approved by the city council. Every material interrogatory submitted depended upon the existence of a *written* contract. Especially is this true of interrogatory No. 6. The issue of unjust enrichment was never submitted to the jury. Interrogatory No. 6 does not even approach unjust enrichment which would have been based upon the value to the city, not the value to the McCuistions. Actually, the trial judge refused to submit instructions on implied contracts and quantum meruit.

I have no quarrel with the majority's position that the city should not be permitted to keep the benefits it received and not pay for them. But there is no question about the fact that the city was to have title to the sewer line in either ten or fifteen years. It has not received a benefit to which it was not entitled with one exception. It had complied with every obligation under the contract, except for paying over the "tie-on" charges.

The McCuistions had written a letter to Mayor Henry on February 16, 1973, stating that the line cost $25,000 to $30,000 and that it would belong to them for ten years or longer. Appellants had contracted to sell certain real estate along with their rights in the line "including the right to charge for connections until construction cost is recovered or the term of ten years, from the date of completion, whichever occurs first."

There simply is no evidence to support the $25,000 verdict. It seems appellants should have some recovery on an implied or quasi-contract basis on the evidence in this record, but it cannot be carved out of the jury verdict.

I concur in the result reached but cannot join the majority in saying that there was substantial evidence to support the verdict that there was a written contract.

JOHN I. PURTLE, Justice, concurring. I concur with the majority in reversing and remanding the case. However, on

remand I would instruct the court to reinstate the jury verdict. This was a suit for breach of contract. In such cases the appellant is not limited to the tie-on fees which have already been paid. The usual pattern is for tie-ons to be slow at first and accelerate as the area develops. Had the appellee not breached the contract appellants may have eventually collected well in excess of $25,000.