Leon KOENIGHAIN *v.* SCHILLING MOTORS, INC.

CA 90-456                                   811 S.W.2d 342

Court of Appeals of Arkansas
. En Banc
Opinion delivered July 3, 1991

*Everett O. Martindale*, for appellant.

*Gruber Law Firm*, by: *Wayne A. Gruber*, for appellee.

JOHN E. JENNINGS, Judge. Appellant, Leon Koenighain, was employed as a new car salesman for appellee, Schilling Motors, Inc., from 1986 through 1989. It was appellant's practice to quote payments to prospective customers that did not include extended warranty, credit life insurance, or sales tax. It was Schilling's policy to require its salesmen to include such items in payments quoted to prospective buyers. After receiving complaints from two buyers about the difference between their actual payment and the payment they were quoted, Schilling fired Koenighain. Koenighain sued for wrongful discharge on the theory that his termination violated public policy and obtained a jury verdict for $5,000.00. The trial judge set the verdict aside on motion for judgment notwithstanding the verdict.

The sole issue raised on appeal is that "the court erred in finding insufficient evidence that defendant's discharge of plaintiff constituted a violation of a well-established public policy of the state." We find no error and affirm.

▉▉ In reviewing the grant of a motion for judgment notwithstanding the verdict, we affirm only if we find there is no substantial evidence to support the jury verdict. *Lancaster* v. *Schilling Motors, Inc.*, 299 Ark. 365, 772 S.W.2d 349 (1989). In making that determination we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party who had obtained the jury verdict. *See McCuistion* v. *City of Siloam Springs*, 268 Ark. 148, 594 S.W.2d 233 (1980).

▉ In *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), the supreme court traced the history in Arkansas of the employment-at-will doctrine. After a discussion of its earlier decisions and cases from other jurisdictions, the court said:

> We are now squarely faced with the decision of whether or not to recognize the public policy exception to the employment-at-will doctrine. Following our lead in *Counce, supra*, we acknowledge that an employer should not have an absolute and unfettered right to terminate an employee for an act done for the good of the public. Therefore, we hold that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. This is a limited exception to the employment-at-will doctrine. It is not meant to protect merely private or proprietary interests. *Wagner, supra.*

> . . . .

> It is generally recognized that the public policy of a state is found in its constitution and statutes. *Kirsey* v. *City of Fort Smith*, 227 Ark. 630, 300 S.W.2d 257 (1957).

The case at bar was sent to the jury on a general verdict. The jury was told nothing about public policy; it was instructed only that it might find for the plaintiff if his discharge was "wrongful." No law was provided to the court that indicated in any way that the practice of the appellee was against the public policy of the State of Arkansas. The only evidence which might be said to relate to public policy was the appellant's testimony that he read

an article somewhere that said quoting car payments which included credit life and warranty had been found to be "illegal" in California.

■ Certainly if there were any dispute at all, it would be for the jury to determine the *reason* for the plaintiff's termination. But whether that reason was "in violation of a well-established public policy of the state" would seem ordinarily to be a question of law for the court. *See Sterling Drug Inc.* v. *Oxford, supra; Smith* v. *American Greetings Corp.*, 304 Ark. 596, 804 S.W. 2d 683 (1991); *Jeffries* v. *State*, 212 Ark. 213, 205 S.W.2d 194 (1947). The jury is simply not equipped to research the statutes in order to determine public policy.

■ There was no evidence at trial that Schilling instructed Koenighain to conceal from prospective purchasers the fact that the quoted monthly payments included credit life or warranty and we must agree with the trial court that the appellee's instruction to include such amounts in monthly payment quotes does not violate any well-established policy of the State of Arkansas. Although we cannot agree with some of the statements made by the trial judge in his memorandum opinion, the statements do not mandate reversal. We will affirm a trial judge's ruling if correct, even if a wrong reason is given. *See West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991); *All City Glass and Mirror, Inc.* v. *McGraw Hill Information Sys. Co.*, 295 Ark. 520, 750 S.W.2d 395 (1988).

Affirmed.

COOPER and MAYFIELD, JJ, dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the majority opinion in this case. In his letter opinion, the trial judge stated:

> The plaintiff in this case was discharged because of a disagreement with his employer concerning the amount to be included in the monthly payment quote to prospective customers. Basically, the plaintiff thought it was wrong to include certain items in that quote, and when he refused to do it, he claims he was fired. The question, thus, is very simply, under these circumstances do we have a violation of a "well established public policy of the state"? It is

apparent that the discharge was not over the employee's refusal to violate a criminal statute. Nor was he discharged for exercising a statutory right or complying with a statutory duty. *Nor is there any well established public policy of the state saying that car dealers cannot mislead prospective purchasers in transactions, if in fact this was what was occurring.* [Emphasis added.]

With all due respect, I think the trial judge was mistaken about the law. He obviously did not think that there was any legislative act that made it unlawful for car dealers (as well as other entities) to mislead prospective purchasers in transactions. However, Arkansas Code Annotated, Title 4, Chapter 88 deals with "Deceptive Trade Practices." Ark. Code Ann § 4-88-107 (1987) provides:

> The act, use, or employment by any person of any deception, fraud, or false pretense, or the concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission, in connection with the sale or advertisement of any goods or services is declared to be an unlawful practice.

And Ark. Code Ann. § 4-88-102 (1987) states:

> Any person, firm, partnership, corporation, or other entity who knowlingly and willfully commits an unlawful practice as defined in this chapter shall be guilty of a misdemeanor and, upon conviction in the circuit court of any county in which any portion of the unlawful practice occurred, shall be subject to a fine of not more than two hundred fifty dollars ($250) or imprisonment of not exceeding one (1) year, or both a fine and imprisonment.

The majority opinion recognizes that in the case of *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), the Arkansas Supreme Court held that "an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state." 294 Ark. at 249. The Court also said that "it is generally recognized that the public policy of a state is found in its constitution and statutes." *Id.* The above quoted statutes clearly state the public

policy of this state. They were sections of Act 92 of 1971, and Chapter 88 of Title 4 of Arkansas Code Annotated codifies that Act in its entirety. The whole Act deals with deceptive trade practices and creates a Consumer Protection Division within the Office of the Attorney General of this state. The Act is not limited to car dealers.

The real problem in this case is that the trial judge, as the majority opinion notes, gave no instruction to the jury about public policy. He simply let the jury decide for itself whether or not the appellant was wrongfully discharged. The jury, doing what juries often do, reached an arguably correct verdict without proper instructions drafted by the lawyers and read by the judge.

In my opinion, the trial court was wrong in granting the appellee's motion for judgment notwithstanding the verdict and finding for the appellee. This means that the employee's claim for wrongful discharge is dismissed with prejudice. The trial court did have the right, under Ark. R. Civ. P. 59 (e), to grant a new trial, on its own initiative "for any reason for which it might have granted a new trial on motion of a party." Section (a) of Rule 59 sets out the grounds for granting a new trial on motion of a party. One ground is "any irregularity in the proceedings . . . by which the party was prevented from having a fair trial." The order of the trial court granting appellee's motion for judgment notwithstanding the verdict was entered within 10 days after entry of the judgment. Within that same period the court could order a new trial under Ark. R. Civ. P. 59(e). I would agree, under the circumstances, to treat appellee's motion for judgment notwithstanding the verdict as a motion for new trial and, therefore, to remand this case for a new trial.

I do not, however, agree to affirm the trial court's granting of a judgment for appellee notwithstanding the verdict for appellant. That action should be taken only when there is no substantial evidence to support the jury verdict, and one party is entitled by law to a judgment in its favor. *McCuistion* v. *City of Siloam Springs*, 268 Ark. 148, 594 S.W.2d 233 (1980). I think there is a well established public policy against any person or corporation employing concealment, suppression, or omission of any material fact, with intent that it be relied upon by others, in connection with the sale or advertisement of any goods or services. In this

case there is evidence from which the jury could find that the appellant was fired because he would not violate the public policy just described. If we are not going to affirm the jury's verdict, we should at least remand for a new trial.

For the reasons stated above, I dissent.

COOPER, J., joins in this dissent.